Kari Rudd (SBN 268288)
Juliana Fredman (SBN 282924)
Bay Area Legal Aid
1035 Market Street, 6th Fl.
San Francisco, CA 94103
Phone: (415) 982-1300
Fax: (415) 982-4243
KRudd@baylegal.org

Attorneys for Plaintiff
MARY FRANK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY FRANK | ) Case No. |
| Plaintiff, | ) |
| | ) COMPLAINT FOR DECLARATORY |
| vs. | ) RELIEF AND DAMAGES; AND |
| | ) DEMAND FOR JURY TRIAL |
| J.P. MORGAN CHASE BANK, N.A., | ) 1. Breach of Contract; |
| | ) 2. Breach of Implied Covenant of |
| Defendant. | )    Good Faith and Fair Dealing; |
| | ) 3. Violation of RESPA; |
| | ) 4. UCL; |
| | ) 5. Negligence. |

Plaintiff MARY FRANK ("Plaintiff") alleges as follows:

## I.     INTRODUCTION

1.     Plaintiff brings this complaint against her former mortgage servicer, J.P. MORGAN CHASE BANK, N.A. ("CHASE" or "Defendant") for actual damages due to Defendant's refusal to consider her applications to assume and modify the mortgage loan on her home after the death of Plaintiff's husband, Joe Frank, in breach of the Deed of Trust. Plaintiff also brings this action under the Real Estate Settlement Procedures Act for Defendant's refusal to respond to her Notice of Error and Request for Information. Plaintiff also brings this action pursuant to California Business and Professions Code Section 17200 *et. seq.*, for restitution of money that she lost as a result of Defendant's acts and omissions and for rescission of the Notice of Default. Finally, Plaintiff brings this action for negligence in the servicing of Plaintiff's mortgage loan.

1

COMPLAINT AND DEMAND FOR JURY TRIAL

## II.        PARTIES

2.        At all times relevant in this Complaint, Plaintiff was and is a competent adult who resides in Contra Costa County, California.

3.        At all times relevant in this Complaint, Plaintiff has been the title owner of the property located at 1799 Bonita Road, San Pablo, CA 94806,  in Contra Costa County ("the home"), a single-family home, and she has occupied the home as her principal residence.

4.        Plaintiff is a widow. Her husband of 46 years, Joe Frank, passed away on September 3, 2011. Joe Frank did not have a will, and there was never a probate case related to his estate. Plaintiff and her husband owned their home "as husband and wife with right of survivorship." Therefore, she became the sole title owner of the home when he passed by operation of the deed.

5.        Defendant, J.P. MORGAN CHASE BANK, N.A. ("CHASE"), is a National Bank located in Columbus, Ohio, and doing business in the State of California. It is registered as a National Bank with the Office of the Comptroller of the Currency.

6.        CHASE was the mortgage servicer for Plaintiff's loan at all times relevant in this Complaint and until November 16, 2013, when servicing of Plaintiff's loan transferred to M&T Bank/Bayview Loan Servicing.

7.        Plaintiff alleges on information and belief that at all times relevant to this Complaint, each of the defendants, including each DOE, was the agent, principle, servant, master, employee, employer, joint-venturer, partner, successor-in-interest, and/or co-conspirator of each other defendant.

8.        Plaintiff alleges on information and belief that at all times relevant to this Complaint, each defendant was at all said times acting in the full course and scope of said agency, service, employment, joint venture, concert of action, partnership, successorship, or conspiracy, and that each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint.

### III.     JURISDICTION

9.     Jurisdiction in this Court is proper pursuant to 28 USC § 1331, as this case involves federal claims under the Real Estate Settlement Procedures Act. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 USC § 1367(a), because the state-law claims are so closely related to the original-jurisdiction claims that they form part of the same case or controversy under Article III of the United States Constitution.

10.     This case also involves an amount at issue greater than seventy-five thousand dollars and there exists complete diversity between the parties.

11.     Venue is proper in this Court because Plaintiff's home is located in Contra Costa County, California and the acts alleged in this Complaint occurred in Contra Costa County, California. Plaintiff's injuries and damages also occurred in Contra Costa County California. CHASE has purposefully established minimum contacts in California by doing business in the state, and maintenance of this action does not offend traditional notions of fair play and substantial justice.

### IV.     INTRA-DISTRICT ASSIGNMENT

12.     Pursuant to L.R. 3-2 (c) & (d), this action should be assigned to the San Francisco Division or the Oakland Division, because a substantial portion of the events or omissions that give rise to Plaintiff's claims occurred in Contra Costa County and the real property, which is the subject of this action, is located in Contra Costa County.

### V.     FACTUAL BACKGROUND

13.     Plaintiff's late husband, Joe Frank, was the borrower on a loan bearing the account number 3011305897, which is secured by a first lien on the home in the form of a Deed of Trust recorded in the Contra Costa County Recorder's office ("the mortgage loan"). Both Plaintiff and her late husband are named in the Deed of Trust. The Deed of Trust is attached as Exhibit A.

COMPLAINT AND DEMAND FOR JURY TRIAL

14.     The mortgage loan was originated on or about November 2, 2006 by the originating lender, Washington Mutual Bank, FA (hereinafter "Washington Mutual"). The original principal balance of the mortgage loan was $385,000. The loan refinanced a previous Washington Mutual loan with approximately the same balance.

15.     Upon information and belief, at all relevant times, Washington Mutual regularly extended consumer credit payable by agreement in more than four installments and/or for which payment of a finance charge was required; originated one or more mortgages in any 12 month period through a mortgage broker; was the entity to whom the mortgage loan was initially payable on the face of the loan documents; made or invested in mortgage loans aggregating more than one million per year; and intended to sell the mortgage loan on the secondary market to the Federal National Mortgage Association ("Fannie Mae"), the Government National Mortgage Association ("Ginnie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac") or another financial institution from which the mortgage loan would be purchased by Freddie Mac. Therefore, the mortgage loan is a "federally related mortgage loan" pursuant to 12 USC § 2602.

16.     On September 25, 2008, Washington Mutual ceased operations.  JPMorgan Chase (the parent company of CHASE) acquired the assets and most of the liabilities of Washington Mutual, including the loan at issue in this case.

17.     Upon information and belief, CHASE services numerous "federally-related mortgage loans" within the meaning of Regulation X, 12 C.F.R. Section 1024.2.

18.      At all relevant times before the transfer of servicing on November 16, 2013, CHASE was the entity responsible for servicing the mortgage loan in this case. This means that CHASE received scheduled periodic payments from Plaintiff and/or her husband, including amounts for escrow accounts, and made payments of principal and interest and such other payments as may be required pursuant to the terms of the loan agreement.

COMPLAINT AND DEMAND FOR JURY TRIAL

19.      After battling a serious illness for several years, Plaintiff's husband suffered cardiopulmonary arrest and passed away on September 3, 2011. During the time of his illness, he had been unable to work, which caused the family to fall behind on their mortgage payments. Prior to his death, Plaintiff and her husband submitted an application for a loan modification to CHASE, but they had not received a decision on that application before he passed.

20.      After her husband's death, Plaintiff attempted to communicate with CHASE about the status of the application and about the loan, but CHASE representatives refused to communicate with her because she was not the "borrower." Plaintiff repeatedly sent a copy of her husband's death certificate to CHASE. She also endured numerous phone conversations in which CHASE representatives asked to speak to her husband, months after she had provided a copy of his death certificates. This was extremely upsetting and distressing to Plaintiff.

21.      Because she could not get any information from CHASE regarding the status of her previous application for assistance, Plaintiff submitted a new application for a modification pursuant to the Home Affordable Modification Program (HAMP) on or about October 15, 2012.

22.      Plaintiff never received a decision on this application. When she contacted CHASE to inquire about the status of her application, CHASE representatives told her that because Joe did not leave a will, she had to file a probate case and become the executor of her husband's estate before CHASE would consider her application to assume and modify the loan.

23.      Plaintiff informed CHASE employees that she and late husband jointly owned the home as spouses. CHASE was also on notice of Plaintiff's ownership interest because it is stated in the recorded Deed as "husband and wife with right of survivorship."

COMPLAINT AND DEMAND FOR JURY TRIAL

24.     Not knowing where to turn when CHASE would not work with her, Plaintiff paid multiple foreclosure rescue scammers thousands of dollars in up-front fees for help with the loan modification process.

25.     Eventually, Plaintiff sought legal assistance from Bay Area Legal Aid. Her attorney contacted an employee of CHASE via email on July 10, 2013 to explain that Plaintiff was the sole title owner of the home, and to demand that CHASE allow Plaintiff to assume and modify the loan and communicate with her regarding the account. Plaintiff's attorney included a signed Making Home Affordable Program ("MHA") Third Party Authorization form with this email correspondence. Plaintiff's attorney never received a response to this email.

26.     Plaintiff's attorney brought this issue to the attention of the California Monitor for the National Mortgage Settlement and continued to correspond with that office during its investigation of Plaintiff's complaint.

27.     CHASE recorded a Notice of Default on September 13, 2013, initiating the foreclosure process on the home, despite the fact that Plaintiff's October 2012 application for a loan modification was still pending. A true and correct copy of the Notice of Default is attached as Exhibit B. The Declaration of Compliance attached to the Notice of Default falsely states that "[t]he mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure . . ." *See* attached Ex. B.

28.     Plaintiff's attorney submitted a complaint to the Office of the Comptroller of the Currency ("OCC") related to CHASE's refusal to consider Plaintiff's application to assume and modify the mortgage loan.

29.     CHASE responded to the OCC complaint in a letter to Plaintiff's attorney dated October 9, 2013, stating that it was not authorized to communicate with the attorney regarding the account. CHASE provided an authorization form to complete and return.

COMPLAINT AND DEMAND FOR JURY TRIAL

This form was different than the MHA Third Party Authorization form Plaintiff had submitted to CHASE on or about July 10, 2013.

30.     Plaintiff completed the new authorization form, as CHASE requested, and her attorney provided it to CHASE in a letter sent by certified mail on October 21, 2013. The letter demanded that CHASE rescind the Notice of Default and that it consider Plaintiff's application to assume and modify the mortgage loan. Enclosed with this letter, Plaintiff's attorney also provided a copy of Plaintiff's Affidavit of Death of Spouse, which Plaintiff recorded on her property records to reflect that her husband had passed away, making her the sole title owner of the home.

31.     CHASE sent another letter dated October 29, 2013 to Plaintiff's attorney again stating that it was not authorized to communicate regarding the account. CHASE included another copy of the same authorization form that Plaintiff had already completed, and which CHASE received on October 25, 2013 according to the Certified Mail Return Receipt.

32.     Plaintiff never received a substantive response to her attorney's October 21, 2013 demand letter.

33.     The servicing of Plaintiff's loan transferred to M&T Bank/Bayview Loan Servicing on or about November 16, 2013.

34.     Plaintiff needed information from her CHASE servicing file in order to submit an application to her new servicer to assume and modify the loan. Specifically, she needed copies of the application packets that she had previously submitted to CHASE, so that she could document her prior efforts to assume and modify the loan. This documentation would give her grounds to dispute a portion of the arrears, because significant interest and fees accrued on the account as a result of CHASE's delay. This documentation would also make it possible for Plaintiff to demand that M&T/Bayview rescind the Notice of Default that was still recorded on her property record.

COMPLAINT AND DEMAND FOR JURY TRIAL

35.     Through her attorney, Plaintiff submitted a Notice of Error and Request for Information (also known as a Qualified Written Request) (hereinafter "NOE/RFI") pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e), to CHASE by certified mail on February 18, 2014. The NOE/RFI included a signed authorization from Plaintiff. CHASE received the NOE/RFI on February 24, 2014 according to the Certified Mail Return Receipt. A true and correct copy of the RFI, and certified mail return receipt, is attached as Exhibit C.

36.     CHASE responded in a letter dated February 27, 2014, acknowledging that it had received the NOE/RFI. However, CHASE never provided the documents and information requested in the RFI. CHASE also never provided a substantive response to the NOE. In a letter dated March 7, 2014, CHASE asserted that it would not share information about the account unless Plaintiff could provide "a copy of the Appointment of Administrator, the Will and Testament which appoints [her] as Executor of the Estate, or the Executor/Trust Agreement." A true and correct copy of the response is attached as Exhibit D.

37.     Plaintiff never obtained the documents and information that she requested, which would have assisted her in negotiations with her new servicer, M&T Bank/Bayview, regarding the accrued interest on the account and the Notice of Default.

38.     As a result of CHASE's failure to comply with the statutory requirement that it respond to Plaintiff' request for copies of her prior loan modification documents, Plaintiff could not convince her new servicer to forgive a portion of the principal balance. Her only option was to accept a loan modification with a new principal balance of $495,471.46. This is more than $110,000 higher than the original principal balance on the mortgage loan.

39.     As a result of Defendant's failure to comply with the statutory requirement that it respond to Plaintiff's request, Plaintiff also could not convince her new servicer to record a rescission of the Notice of Default, which remained on her property records for

COMPLAINT AND DEMAND FOR JURY TRIAL

more than a year. Her current servicer recorded a rescission on January 8, 2015, shortly after her loan modification became permanent.

40.     During the time that the Notice of Default was active on her property records, Plaintiff was continuously harassed by unscrupulous foreclosure rescue scammers. Not only did she receive countless solicitations in the mail for questionable services, she also had strangers knocking on her door, presumably to sell foreclosure rescue services or trying to get a look at her house before it went up for auction. These unwelcome intrusions were extremely distressing to Plaintiff.

41.     In addition to monetary harm, Plaintiff has suffered severe emotional distress throughout the process of applying for a loan modification since her husband passed away. Plaintiff was already grieving the loss of her husband of 46 years. On top of that, she had to struggle to make CHASE give her information regarding the loan, repeatedly explain to CHASE representatives that her husband was deceased, submit her husband's death certificate over and over again, and wait years for a decision on her loan modification before servicing transferred from CHASE to another servicer. She also had to put up with a continuous stream of unwanted solicitations from foreclosure rescue scammers while the Notice of Default was recorded on her property records. During this time, between September 2011 and November 2014, Plaintiff lived in constant fear losing her home and felt a great deal of stress and sadness.  Plaintiff's health has suffered as a direct result of the emotional distress she endured while seeking a loan modification from CHASE.

42.     Plaintiff has also suffered other monetary damages in an amount to be proven at trial, including, but not limited to: money paid to foreclosure rescue scammers that was not refunded; costs of repeatedly faxing documents to CHASE or sending documents by certified or overnight mail; improper fees and other charges, which accrued on her account as a result of prematurely referring the account to foreclosure; and costs

COMPLAINT AND DEMAND FOR JURY TRIAL

1  incurred in sending documents to her attorney or traveling to meet with her attorney in

2  order to respond to CHASE's unlawful actions.

3                                VI.      CAUSES OF ACTION

4                              FIRST CAUSE OF ACTION:
                                BREACH OF CONTRACT
5

6        43.     Plaintiff re-alleges and incorporates by reference each of the preceding

7  paragraphs herein.

8        44.     Mary Frank is named as a Trustor and Borrower under the Deed of Trust

9  secured by the home. The Deed of Trust, attached as Exhibit A, is a binding and

10  enforceable contract that entitles Ms. Frank to all of the rights and privileges of a borrower

11  on a mortgage loan.

12        45.     CHASE, acting as the servicer for the loan on behalf of the investor, was

13  bound by the provisions of the Deed of Trust.

14        46.     Ms. Frank fully performed under the Deed of Trust except for those

15  conditions for which performance was excused.

16        47.     CHASE breached its obligations under the Deed of Trust through its own

17  conduct and the conduct of its agent Trustee Corps when it:

18                     a.  initially refused to communicate with Ms. Frank regarding the status of

19                         the loan;

20                     b.  refused to review her application to assume and modify the loan; and

21                     c.  refused to provide information and documents regarding the loan in

22                         response to her RFI; and

23                     d.  refused to respond to her NOE.

24        48.     Ms. Frank was damaged as a result of the breach. Her account accrued

25  excessive interest, fees, and charges related to delinquency. Ms. Frank also suffered severe

26  emotional distress, as she struggled for years to convince Chase to communicate with her

27

COMPLAINT AND DEMAND FOR JURY TRIAL

and process her application for a loan modification. For more than 3 years, she lived in fear of losing her home through foreclosure.

49.     As a result of Defendant's breach of the contract, Plaintiff seeks actual damages in an amount to be determined at trial.

SECOND CAUSE OF ACTION:
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

50.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

51.     In every contract or agreement, including those at issue here, there is an implied promise of good faith and fair dealing, which means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

52.     Defendant breached the contract by breaching its duty of good faith, as described above.

53.     Plaintiff was harmed as a result of these breaches, as described above.

54.     As a result of Defendant's breaches, Plaintiff seeks actual damages in an amount to be determined at trial.

THIRD CAUSE OF ACTION
REAL ESTATE SETTLEMENT PROCEDURES ACT

55.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

56.     The loan is a "federally-related mortgage loan" as that term is defined under 12 USC § 2602, as it is secured by a first lien on residential real property, which is a single-family home, made by a lender that is regulated by an agency of the Federal Government, and which was intended to be sold to a government-sponsored entity, and which was sold to the Federal Home Loan Mortgage Corporation ("Freddie Mac').

11

COMPLAINT AND DEMAND FOR JURY TRIAL

57.     The loan is therefore subject to the Real Estate Settlement Procedures Act ("RESPA"), 12. USC §§ 2601 *et. seq.,* and the regulations promulgated under that statute, Regulation X, 12 CFR § 1024.41 *et seq.*

58.     CHASE is therefore a "servicer" of a "federally related mortgage loan" as these terms are defined under RESPA, 12 USC §§ 2605(i)(2)-(3), and is therefore subject to the requirements of RESPA and Regulation X.

59.     There is no definition for "borrower" within RESPA or Regulation X. However, Plaintiff is a borrower according to the Deed of Trust. *See* Exhibit A.

60.     A borrower may file an action pursuant to 12 USC § 2605(f), which provides a borrower the right to enforce certain provisions of RESPA, including Regulation X § 1024.41.

61.     Plaintiff sent CHASE a "qualified written request," also known as a "notice of error" and a "request for information," within the meaning of RESPA, 12 USC § 2605(e)(1)(B) and Reg. X, 12 USC §§ 1024.35(a) and 1024.36(a), which included sufficient information and detail to enable the servicer to identify the name and account of the borrower, as well as a statement of reasons as to how the account was in error.

62.     CHASE violated Reg. X when it failed to provide the information and documents requested in Plaintiff's RFI, and failed to respond to the NOE. 12 U.S.C § 2605.

63.     As a result of these violations, Defendant is liable for actual damages pursuant to 12 USC § 2605(f)(1)(A). Plaintiff's actual damages include, without limitation: costs of transportation and other expenses incurred while attempting to obtain CHASE's compliance with RESPA; additional interest and other charges added to the loan balance during CHASE's delay (and never removed because Plaintiff could not obtain information she needed from CHASE to send to her new servicer in order to dispute the charges); and severe and ongoing emotional distress.

64.     Upon information and belief, CHASE has a "pattern and practice" of failing to respond to Notices of Error or Requests for Information from borrowers who are

borrowers under a Deed of Trust, but not obligors on the note. This subjects CHASE to statutory damages up to $2,000 pursuant to 12 USC § 2605(f)(1)(B).

65.    If Plaintiff prevails in this action, CHASE is also liable for reasonable attorneys' fees and costs pursuant to 12 USC § 2605(f)(3).

FOURTH CAUSE OF ACTION:
INJUNCTION AGAINST UNFAIR BUSINESS PRACTICES, CALIFORNIA
BUSINESS AND PROFESSIONS CODE SECTION 17200.

66.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

67.    Business and Professions Code Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

68.    Business and Professions Code Section 17203 provides that any person who engages in such practices "may be enjoined in any court of competent jurisdiction."

69.    CHASE engaged in unlawful, unfair and fraudulent acts and practices when it:

a.  initially refused to communicate with Ms. Frank about the loan after her husband passed away;

b.  refused to process her application to assume and modify the loan;

c.  recorded a Notice of Default before giving Ms. Frank a decision on her application (which constitutes illegal dual-tracking under the California Homeowner Bill of Rights, Cal. Civil Code Sec. 2923.6);

d.  executed a Declaration of Compliance (attached to the Notice of Default) which contained false representations; and

e.  refused to provide information and documents related to the loan in response to Plaintiff's RFI.

13

COMPLAINT AND DEMAND FOR JURY TRIAL

1          70.      These acts and practices are "unlawful" as they are in violation of RESPA,

2    Regulation X, HBOR, and the common law.

3          71.      CHASE's conduct was fraudulent and misleading, because it provided

4    notices to Plaintiff that were misrepresentative as to her rights under the law, and that

5    would likely deceive other members of the public and negatively impact consumers' legal

6    rights.

7          72.      CHASE's conduct was unfair in that it violated the public policy underlying

8    federal and state laws and regulations that prohibit "dual tracking," which are designed to

9    protect borrowers from premature and unnecessary foreclosures, and preserve

10   neighborhood stability by keeping families in their homes. *See* Cal. Civ. Code § 2923.4(a).

11   *Also see* Sen. Floor Analysis of Assemb. Bill No. 278 ("AB 278 Analysis"), Conf. Rep.

12   No. 1, Reg. Sess., at 26 (Cal. July 2, 2012). CHASE's conduct is also unfair in that its

13   refusal to process a widow's loan modification application is inconsistent with public

14   policy laid out in administrative guidance for the federal Making Home Affordable

15   Program, and guidelines promulgated by Fannie Mae and Freddie Mac, which direct

16   servicers to allow successors in interest, such as Plaintiff, to apply to assume and modify a

17   loan after the death of a borrower. *See* Freddie Mac Servicing Guide, Chapter B65.28

18   (amended June 3, 2014); Fannie Mae Single Family 2015 Servicing Guide at D1-4.1-02:

19   Allowable Exemptions Due to the Type of Transfer (amended Nov. 12, 2014); Making

20   Home Affordable Handbook, Version 4.4 § 8.8. CHASE's conduct not only offends public

21   policy, but it causes substantial injury to Plaintiff and other consumers, and has no utility

22   to outweigh this substantial harm.

23         73.      Plaintiff has lost money in an amount to be proven at trial as a direct and

24   proximate result of Defendant's unlawful and unfair business practices, including, but not

25   limited to, the excess interest, fees, and charges that CHASE added to the loan balance as a

26   direct and proximate result of those actions.

27

COMPLAINT AND DEMAND FOR JURY TRIAL

74.     Defendant has been unjustly enriched and should be ordered to make restitution to Plaintiff pursuant to Business and Professions Code sections 17203 and 17204.

75.     Therefore, Plaintiff may bring this action as a "person who has suffered injury in fact and has lost money or property as a result of unfair competition." Bus. & Prof. Code § 17204.

FIFTH CAUSE OF ACTION:
NEGLIGENCE

76.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

77.     CHASE had a duty to exercise reasonable care and skill in servicing Plaintiff's loan. This duty includes, but is not limited to, complying with the terms of the Deed of Trust, complying with applicable federal loan modification program guidelines, complying with Regulation X and the California Homeowner Bill of Rights, and fairly and accurately evaluating Plaintiff's eligibility for all available foreclosure prevention alternatives. *See Alvarez v. BAC Home Loans Servicing LP.*, 176 Cal. Rptr. 3d 304 (Cal. Ct. App. 2014).

78.     CHASE breached its duty to Plaintiff by:

    a.   initially failing to communicate with Plaintiff regarding the loan after her husband passed away;

    b.   requiring that Plaintiff repeatedly submit her husband's death certificate to CHASE;

    c.   instructing Plaintiff to file a probate case in order to become executor of her husband's estate when this was not necessary in order to assume and modify the loan;

    d.   refusing to evaluate Plaintiff's application to assume and modify the loan;

15

COMPLAINT AND DEMAND FOR JURY TRIAL

e.   ignoring Plaintiff's attorney's email inquiring about the status of Plaintiff's application;

f.   recording a Notice of Default with attached Declaration of Compliance containing false statements while Plaintiff's application was pending; and;

g.   refusing to provide information and documents related to the loan in response to Plaintiff's RFI.

79.    CHASE knew or reasonably should have known that these actions would put Plaintiff's home at risk of foreclosure, cause Plaintiff severe emotional distress, and cause excessive charges to accrue on the loan.

80.    As a direct and proximate result of CHASE's negligent actions, Plaintiff has suffered and will suffer injuries, including, but not limited to: emotional distress, accrual of interest and fees on her mortgage loan account, and other expenses to be proven at trial. Had CHASE used proper skill and care in the handling of Plaintiff's application, she would have had a fair opportunity to avoid foreclosure and enter into a program that would allow her to keep her home without suffering emotional distress and incurring the other damages listed above.

VII.    REQUEST FOR RELIEF

Plaintiff prays for relief as follows:

1.    For a declaration that Plaintiff is the prevailing party in this action;

2.    For economic damages, according to proof;

3.    For general damages, including emotional distress damages,  according to proof;

4.    For statutory damages of $2,000 under RESPA;

5.    For attorney's fees and costs incurred in this action; and

6.    For such other and further relief as the Court deems just and proper.

VIII.    DEMAND FOR JURY TRIAL

16

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Respectfully submitted,
BAY AREA LEGAL AID


By:    /s/ Kari A. Rudd
Kari Rudd,
Attorney for Plaintiff
MARY FRANK

COMPLAINT AND DEMAND FOR JURY TRIAL