# EXHIBIT A

RECORDING REQUESTED BY
CHICAGO TITLE COMPANY

58401548

3011305897

20

Recording Requested By:

WASHINGTON MUTUAL BANK FA

Return To:

WASHINGTON MUTUAL BANK  FA
2210 ENTERPRISE DR
FLORENCE, SC 29501
DOC OPS M/S FSCE 440

Prepared By:

KWANG CHONG

CONTRA-COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2006-0352753-00
Acct 2- Chicago Title
Thursday, NOV 02, 2006 08:00:00
MIC   $1.00:MOD  $20.00:REC  $24.00
TCF  $19.00:DAF   $1.80:REF   $0.20
Ttl Pd   $66.00     Nbr-0003472278
                     cgv/R2/1-20

ORIGINAL DEED

ZCA1
M06

## DEED OF TRUST

3011305897-068



—————————— [Space Above This Line For Recording Data] ——————————

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   OCTOBER 24, 2006   ,
together with all Riders to this document.
(B) "Borrower" is   JOE N FRANK AND, MARY D FRANK, HUSBAND AND WIFE

Borrower's address is   1799 BONITA ROAD, SAN PABLO, CA 94806
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is   WASHINGTON MUTUAL BANK , FA

Lender is a   FEDERAL SAVINGS BANK
organized and existing under the laws of   THE UNITED STATES OF AMERICA   .

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01

VMP –6(CA) (0207)

Page 1 of 15           Initials: _____ M D F
     VMP MORTGAGE FORMS - (800)521-7291



352753

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP

(E) "Note" means the promissory note signed by Borrower and dated OCTOBER 24, 2006
The Note states that Borrower owes Lender THREE HUNDRED EIGHTY FIVE THOUSAND
AND 00/100                                                          Dollars
(U.S. $    385,000.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

Initials:

352753

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY                                of  CONTRA COSTA                          :
        [Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT
AND IS MADE A PART HEREOF.

Parcel ID Number:                                which currently has the address of
1799 BONITA ROAD                                                          [Street]
SAN PABLO                             [City], California 94806   [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

Initials: _____

-6(CA) (0207)                    Page 3 of 15                    Form 3005 1/01

352753

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

Initials: _____

352753

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____

352753

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Initials:

352753

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

352753

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Initials: _____

-6(CA) (0207)                    Page 8 of 15                    Form 3005 1/01

352753

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

Initials: _____

352753

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

Initials: ___

352753

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

352753

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

   Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

Initials: JW m D F.

352753

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

Initials: _M. D. F._

352753

ZCA2

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

   25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____       *Joe N Frank*_____ (Seal)
                                                              -Borrower
                                JOE N FRANK


_____       *Mary D Frank*_____ (Seal)
                                                              -Borrower
                                MARY D FRANK


_____ (Seal)   _____ (Seal)
                  -Borrower                           -Borrower


_____ (Seal)   _____ (Seal)
                  -Borrower                           -Borrower


_____ (Seal)   _____ (Seal)
                  -Borrower                           -Borrower


VMP®-6(CA) (0207)          Page 14 of 15               Form 3005 1/01

352753

State of California
County of ~~CONTRA COSTA~~ *pu ALAMEDA*                    } ss.

On *10-27-2006*                    before me, *Rapunzel Martinez,*
*Notary Public*                                      personally appeared
JOE N FRANK, MARY D FRANK

personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.
WITNESS my hand and official seal.

_____ (Seal)

RAPUNZEL MARTINEZ
COMM. # 1419013
NOTARY PUBLIC – CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. MAY 20, 2007

RAPUNZEL MARTINEZ
COMM. # 1419013
NOTARY PUBLIC – CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. MAY 20, 2007

Initials: _____

-6(CA) (0207)                    Page 15 of 15                    Form 3005 1/01

352753

R2US
M06

3011305897-068

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this _____ 24TH _____ day of OCTOBER, 2006 _____ , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to

WASHINGTON MUTUAL BANK, FA

("Lender") of the same date and covering the property described in the Security Instrument and located at:
>       1799 BONITA ROAD
>       SAN PABLO, CA 94806
>               (Property Address)

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of _____ 5.875 _____ %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of NOVEMBER 01, 2013 _____ , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR – Single Family – Fannie Mae Uniform Instrument                                          Form 3187 6/01
-168R (0401)
Page 1 of 4     Initials: _____
VMP Mortgage Solutions
(800)521-7291

352753

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   TWO                     percentage points (    2.000    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than  10.875       % or less than   2.000         %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than       10.875      %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

352753

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Initials: _J.W. m. D. Z._

@MP₂-168R (0401)          Page 3 of 4          Form 3187 6/01

352753

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
                    −Borrower

_____ (Seal)
                    −Borrower

JOE N FRANK

_____ (Seal)
                    −Borrower

_____ (Seal)
                    −Borrower

Mary D. Frank

_____ (Seal)
                    −Borrower

_____ (Seal)
                    −Borrower

_____ (Seal)
                    −Borrower

_____ (Seal)
                    −Borrower

-168R (0401)            Page 4 of 4            Form 3187 6/01

352753

Title No. 06-**39109308**-JK
Locate No. CACTI7707-7701-5584-0039109308

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN UNINCORPORATED AREA, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 1 OF MAP OF SUBDIVISION 3283, FILED JUNE 20, 1966, MAP BOOK 111, PAGE 28 CONTRA COSTA COUNTY RECORDS.

APN: 420-071-023

**END OF DOCUMENT**

CLTA Preliminary Report Form (11/17/04)

# EXHIBIT B

2013902247450000
CONTRA COSTA Co Recorder Office
JOSEPH CANCIAMILLA, Clerk-Recorder
DOC-2013-0224745-00
Acct 1063-First American Title Santa Ana Ca Simpli
Friday, SEP 13, 2013 12:39:09
MOD    $3.00|REC   $13.00|FTC    $2.00
DAF    $2.70|REF    $0.30|RED    $1.00
ERD    $1.00|             |
Ttl Pd   $23.00     Rcpt # 0001784981
kat/RC/1-3

RECORDING REQUESTED BY:

First American Title Insurance Company

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA  92614

| APN: 420-071-023-6 | TS No: CA09000998-13-1 | TO No: 8346201 |
| --- | --- | --- |

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TÀI LIỆU NÀY
**(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1).  The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)**

## IMPORTANT NOTICE
# IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recording appears on this notice).

This amount is **$76,093.23** as of **September 12, 2013**, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits

APN: 420-071-023-6                TS No: CA09000998-13-1              TO No: 8346201

a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: **JPMorgan Chase Bank, National Association c/o Trustee Corps** located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 Ref No: CA09000998-13-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** TRUSTEE CORPS is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of October 24, 2006, executed by JOE N FRANK AND, MARY D FRANK, HUSBAND AND WIFE, as Trustor(s), to secure obligations in favor of WASHINGTON MUTUAL BANK, FA the original Beneficiary, recorded November 2, 2006, as Instrument No. 2006-0352753-00, of the official records in the Office of the Recorder of Contra Costa County, California, as more fully described on said Deed of Trust. Including a Note(s) for the sum of $385,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON July 1, 2010 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS FORECLOSURE COSTS AND LEGAL FEES. PLUS ALL OF THE TERMS AND CONDITIONS AS PER THE DEED OF TRUST, PROMISSORY NOTE AND RELATED LOAN DOCUMENTS.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to MTC FINANCIAL INC. dba TRUSTEE CORPS, said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.55 is attached.

Dated: September 12, 2013            **TRUSTEE CORPS**
                                     **as Duly Appointed Successor Trustee**

                                     By: Karen Talafus, Authorized Signatory

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

Borrower(s):      JOE N. FRANK

Property Address:    1799 BONITA RD.
                    SAN PABLO CA 94806

Loan Number:      XXXXXX 5897

# DECLARATION OF COMPLIANCE

### (California Civil Code Section 2923.55)

The undersigned mortgagee, beneficiary or authorized agent hereby declares, under the laws of the State of California, as follows:

☐ The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.55. Thirty days or more have elapsed since the borrower was contacted.

☑ The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.55. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.55 because:

    ☐ The real property is not owner-occupied residential real property as defined by the statute.

    ☐ The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

    ☐ The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

    ☐ The borrower has filed for bankruptcy under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code, and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case or granting relief from stay.

    ☐ The individual does not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

I certify under the laws of the state of California that the above is true and correct.

JP Morgan Chase Bank, National Association

Date:    08/20/2013        By:    _____

City/State: Jacksonville, FL

                              Clement J. Durkin
                        Operations Senior Specialist

ATTACHMENT TO NOTICE OF DEFAULT

# EXHIBIT C

Ramón P. Arias
Executive Director


# BAY AREA LEGAL AID
### WORKING TOGETHER FOR JUSTICE

February 18, 2014


Chase
Attn: Customer Service Research
Mail Code: OH4-7302
P.O. Box 24696
Columbus, OH 43224-0696

CERTIFIED MAIL

**RE:   Mary Frank (surviving spouse of Joe Frank), Loan No. 3011305897, 1799 Bonita Rd., San Pablo, CA 94806.**

To Whom it May Concern:

Please treat this letter as a "Qualified Written Request" under the Real Estate Settlement Procedures Act 12 U.S.C. § 2605(e). I am submitting this request as an agent of my client Mary Frank, and on her behalf. An authorization is enclosed for your convenience.

This is a notice of error. The error on this account arises from Chase's failure to process Ms. Frank's multiple applications to assume and modify the loan since 2011, in violation of Freddie Mac guidance and federal law (Garn- St. Germain, 12 U.S.C. §1701j-3(d)) which entitle widows such as Ms. Frank to assume and modify mortgage loans on their property if they are not named as borrowers on the account. Chase also illegally recorded a notice of default on the account while Ms. Frank's applications to assume and modify the loan were pending.

To the extent that Chase charged to the account any late fees, appraisal fees, broker price opinion fees, property inspection/preservation fees, legal fees, recoverable corporate advances, and other fees or costs in connection with the notice of default and Chase's claim that the account is in default, Ms. Frank disputes such as fees and costs and specifically requests that the account be corrected to delete such fees and costs and that Chase rescind its notice of default and record a notice of rescission to reflect this.

This is also a request for information related to the servicing of the loan number 3011305897 ("the account"). Specifically, Ms. Frank requests the following:

1. Complete copies of any and all assumption applications or related documentation submitted to Chase by Ms. Frank or anyone on her behalf;

San Francisco County Regional Office
1035 Market Street, 6th Floor
San Francisco, CA 94103

Phone: 415.982.1300
Toll Free: 800.551.5554
Fax: 415.982.4243

www.baylegal.org

LSC                                    Serving the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Santa Clara

February 18, 2014

2. Complete copies of any and all Making Home Affordable applications or related documentation submitted to Chase by Ms. Frank or anyone on her behalf;

3. A detailed summary of the following account information:
   a. The monthly principal and interest payment, and monthly escrow payment from January 2011 until November 16, 2013.
   b. The total amount, separately listed and identified, for any unpaid principal, interest, escrow charges, and other charges due and owing immediately before servicing transferred effective November 16, 2013.
   c. The total amount paid by the borrowers on the account as of the date of the notice of default.
   d. For each payment received from January 1, 2011 to November 16, 2013, indicate the amount of the payment, the date received, the date posted to the account, how the payment was applied or credited (indicating the portion, if any, applied or credited to principal, interest, escrow, suspense or other treatment), and the month to which the payment was applied. If interest is calculated using a daily accrual accounting method, indicate for each payment the number of days that lapsed from the prior payment application date.
   e. The amount, payment date, purpose, and recipient of all foreclosure expenses, late charges, NSF check charges, appraisal fees, property inspection/preservation fees, force placed insurance charges, legal fees, bankruptcy/proof of claim fees, recoverable corporate advances, and other expenses or costs that have been charged and/or assessed to the account from January 1, 2011 to November 16, 2013.
   f. The amount, payment date, purpose, and recipient of all escrow account items, including but not limited to taxes, water and sewer charges, and insurance premiums, charged and/or assessed to the account from January 1, 2011 to November 16, 2013.
   g. A breakdown of the escrow account payment that was current as of the time immediately before servicing transferred (November 16, 2013) showing how it was calculated and the reasons for any increase or decrease in the months prior to November 15, 2013. Indicate the date when the last escrow account analysis was conducted on the account;
   h. The balance in the escrow account at the time immediately before servicing transferred (November 16, 2013).
   i. The balance in any suspense account at the time immediately before servicing transferred (November 16, 2013) and the reason why such funds were deposited in said account.
   j. The interest rate on the account at the time immediately before servicing transferred (November 16, 2013).

4. Please indicate the date when you began servicing the account, and if you acquired servicing rights in this account following a transfer of servicing from another servicer, state the name of the prior servicer and the effective date of the transfer of servicing to Chase.

You must acknowledge receipt of this qualified written request within 5 days (excluding holidays, Saturdays and Sundays) unless you have already taken the required action to respond to this request within that time (12 C.F.R. §§ 1024.35(f) and 1024.36(c)). Within 30 days (excluding holidays,

Page 3                                                                February 18, 2014

Saturdays, and Sundays) you must correct the error or provide a response to the notice of error, and also provide the information requested above (12 C.F.R. §§ 1024.35(e) and 1024.36(d)).

Finally, please also provide the name, address and other relevant contact information for the owner of the loan within 10 days as required by RESPA (§ 2605(k)(1)(D)) and Regulation X (§ 1024.36(d)).

Thank you for taking the time to acknowledge and answer this request as required by the Real Estate Settlement Procedures Act (§ 2605(e)).

Best Regards,

Kari Rudd
Staff Attorney

Encl: Authorization

CC: Mary Frank

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Wayne Spencer_    ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

1. Article Addressed to:

**Chase**
**Attn:  Customer Service Research**
**Mail Code:  OH4-7302**
**P.O.Box 24696**
**Columbus ,OH 43224-0696**

3. Service Type
   ☐ Certified Mail®      ☐ Priority Mail Express™
   ☒ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)       ☐ Yes

2. Article Number
   (Transfer from service label)

   7012 3460 0002 9346 8535

PS Form 3811, July 2013          Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.69 |

Postmark Here

Sent To

Street, Apt or PO Box

City, Stat

**Chase**
**Attn:  Customer Service Research**
**Mail Code:  OH4-7302**
**P.O.Box 24696**
**Columbus ,OH 43224-0696**

7012 3460 0002 9346 8535

# EXHIBIT D

**Chase (OH4-7120)**
3415 Vision Drive
Columbus, OH 43219-6009

**CHASE** 

March 7, 2014

000097 1 of 4 NSP0MCL0-Z1 0 000000
Kari Rudd
Bay Area Legal Aid, San Francisco County Regional Office
1035 Market Street, 6th Floor
San Francisco, CA 94103

**We need additional documents to share information with you**

Reference Number:     20131007EOTLB0073-3

Dear Kari Rudd:

We're writing to let you know we received your letter dated February 18, 2014, which we received on February 25, 2014.

We aren't able to share information about this account with you because we don't have the authorization we need. If you have questions, please contact the new servicer M&T BANK at telephone number 1-866-462-1156. Before the accounts servicing was transferred, we advised your client of the following:

To receive information on this account, we will need you to provide us with a copy of the Appointment of Administrator, the Will and Testament which appoints you as Executor of the Estate, or the Executor/Trust Agreement. Our records show that we have received a copy of the Certified Death Certificate. Only the Death Certificate was received. We are enclosing copies of the letters we have sent previously regarding this matter dated October 17, 2013, November 8, 2013, and January 15, 2014, for your review.

If you have any questions, please call us at one of the telephone numbers below.

Sincerely,

Chase Mortgage Banking Executive Office
1-888-310-7995
1-800-582-0542 TTY
chase.com

Enclosures

**Chase (OH4-7120)**
3415 Vision Drive
Columbus, OH 43219-6009

**CHASE** 

October 17, 2013

Mary Frank
1799 Bonita Road
San Pablo, CA 94806-4200

**We can't share our customer's loan information with you**
Reference Number: 20131007EOTLB0073

Dear Mary Frank:

We're responding to your correspondence, dated September 16, 2013, addressed to the Office of the Comptroller of the Currency, which we received on October 7, 2013, about assistance with a mortgage loan.

We cannot give you information because the account owner did not give us authorization to share it with you. According to our records, you are not an authorized party on the account you provided.

To receive information on this account, we will need you to provide us with a copy of the Appointment of Administrator, the Will and Testament which appoints you as Executor of the Estate, or the Executor/Trust Agreement. Our records show that we have received a copy of the Certified Death Certificate.

Once you have received one of these executed documents, please include the loan number, borrower's name, and property address, and mail or fax it to:

| | |
|---|---|
| Regular Mail: | Chase (OH4-7302)<br>Attention: Customer Service Research<br>P.O. Box 24696<br>Columbus, OH 43224-0696 |
| Overnight Mail: | Chase (OH4-7302)<br>Attention: Customer Service Research<br>3415 Vision Drive<br>Columbus, OH 43219 |
| Fax: | 614-422-7575 |

Upon receipt of this documentation, we will update our account records to reflect your approved authorization, including the purpose and duration of the access. You must resubmit any previous inquiries for us to consider them. We will not be able to provide you with any details of this account until we have received the requested documents.

We have always maintained high standards for safeguarding customer information, and we strive to handle it with care and discretion at all times.

If you have any questions about this matter, please contact Chad Benedict at 855-217-8966, extension 3255002.

Sincerely,


Chase
1-888-310-7995
1-800-582-0542 TTY
1-614-422-7575 Fax
www.chase.com

cc: Office of the Comptroller of the Currency, Case 2935331

**We are a debt collector.**

**To the extent the customer's original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.**


EX109

**Chase (OH4-7120)**
3415 Vision Drive
Columbus, OH 43219-6009

**CHASE** 

November 8, 2013

Mary Frank
1799 Bonita Road
San Pablo, CA 94806-4200

**We cannot share our customer's loan information with you**

Reference Number: 20131007EOTLB0073-1

Dear Mary Frank:

We are responding to correspondence dated October 21, 2013, written on your behalf by
Bay Area Legal Aid, and addressed to Chase, which we received in our office on October 25, 2013,
about assistance with a mortgage loan.

We cannot give you information because the account owner did not give us authorization to share it with
you. According to our records, you currently are not an authorized party on the account you provided.

To receive information on this account, we will need you to provide us with a copy of the Appointment of
Administrator, the Will and Testament, which appoints you as Executor of the Estate, or the
Executor/Trust Agreement. Our records show that we have already received a copy of the
Certified Death Certificate.

Once you have received one of these executed documents, please include the loan number, borrower's
name, property address, and mail or fax it to:

| | |
|---|---|
| Regular Mail: | Chase (OH4-7302)<br>Attn: Customer Service Research<br>P.O. Box 24696<br>Columbus, OH 43224-0696 |
| Overnight Mail: | Chase (OH4-7302)<br>Attn: Customer Service Research<br>3415 Vision Drive<br>Columbus, OH 43219 |
| Fax: | 1-614-422-7575 |

Upon receipt of this documentation, we will update our account record to reflect your approved authorization, including the p    ose and duration of the access. You must     resubmit any previous inquiries for us to consider them. We will not be able to provide you with any details of this account until we have received the requested documents.

We have always maintained high standards for safeguarding customer information, and we strive to handle it with care and discretion at all times.

Please include the loan number on the documents you send. We will not be able to provide you with any loan status or information until we receive the documents showing you are the Executor of the Estate. We would also accept a copy of the Will showing that you have inherited the property as this is a recorded document.

To apply for an Assumption, please contact Chase Customer Service at 1-800-848-9136.
Chase appreciates your feedback regarding the level of service you received, as we take these matters very seriously. We have shared your comments with management so that they may be addressed accordingly.

If you have any questions about this matter, please contact Chad Benedict at 1-855-217-8966, extension 3255002.

Sincerely,


Chase
1-888-310-7995
1-800-582-0542 TTY
1-614-422-7575 Fax
www.chase.com

**We are a debt collector.**

**To the extent the customer's original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.**


EX109

**Chase (OH4-7120)**
3415 Vision Drive
Columbus, OH 43219-6009

**CHASE** 

January 15, 2014

California Monitor
Attn: Jennifer Song
401 East Peltason Drive, Law 3800
Irvine, CA 92697

## The servicing of this loan has been transferred

Borrower Name:        Estate of Joe N. Frank
Reference Number:     20131007EOTLB0073-2

Dear Jennifer Song:

We are responding to correspondence dated November 25, 2013, which we received in our office on December 6, 2013, regarding a loan assumption and modification request for Ms. Mary Frank.

Included in this letter is an explanation of our loan assumption process. However, we would like to note that this loan transferred to M & T Bank effective November 16, 2013. Therefore, Ms. Frank will need to contact the new servicer at 1-866-462-1156 to discuss an assumption of the loan.

Ms. Frank is listed on the Deed, but not on the Note. For a servicer to work with her on options for this loan, she needs to first apply for an assumption. An assumption is the purchase of a mortgaged property whereby the buyer accepts liability for the existing debt. The seller remains liable to the mortgage lender (whether the lender is a commercial bank, thrift, credit union, mortgage banker, or private lender) unless the lender agrees to release the seller from further liability. When the loan is paid in full, the satisfaction or lien release issued will show the name of the original borrower(s), as the parties assuming the loan never took out a mortgage and there is no mortgage in the land records under their name.

In case of the death of a borrower, as Ms. Frank has experienced, we require the following information to review an assumption: a written request, including the loan number, providing documentation including a copy of the death certificate and a copy of the probated and recorded will, along with any accompanying legal documentation. We can also accept a copy of the Succession, the Judgment of Possession, or Letters of Testamentary, along with any accompanying legal documentation such as deeds affecting the title transfer.

If the party being awarded the property was never liable for the original loan (did not sign the original note), please include the W-9, the recorded Assumption Agreement, and proof of insurance with the new party being added. If no Will or Succession of the Estate was executed, Chase will place the account in "The Estate of (deceased borrower)" until there is a settlement of the estate or until we receive proof of joint tenancy with rights of survivorship. This information is located in the original mortgage or deed of trust or the original warranty deed.

We don't have any record of advising Ms. Frank that she had to go through probate court. Her authorized third party was informed thae needed to have her name added to then in order for us to be able to assist her. A letter dated October 17, 2013, informed Ms. Frank that we had received the death certificate for Joe Frank, but in order to assist her we needed either the Will and Testament appointing her as Executor of the Estate or the Executor/Trust Agreement. Unfortunately, we never received that information so were unable to move forward with the assumption.

We sincerely apologize that our level of customer service did not meet Ms. Frank's expectations.

Sincerely,


Chase
1-888-310-7995
1-800-582-0542 TTY
1-614-422-7575 Fax
www.chase.com


**We are a debt collector.**

**To the extent the customer's original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.**



USPOSTAGE
$00.842
MAR 13 2014
ZIP 75019
009336
0Y 3002922

FIRST CLASS
PRESORTED



SS BMHBNB3 94103