United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

MARY DELLA FRANK,
Plaintiff,

v.

J.P. MORGAN CHASE BANK, N.A.,
Defendant.

Case No. 15-cv-05811-LB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Re: ECF No. 27

**INTRODUCTION**

Mary Frank brings this action against JPMorgan Chase for its alleged wrongful conduct in servicing her mortgage.[1] She alleges that, after her husband passed away, Chase wrongfully refused to communicate with her, preventing her from assuming, modifying, and curing default on the loan.[2] She brings claims for breach of the implied covenant of good faith and fair dealing, violation of the Real Estate Settlement Procedures Act ("RESPA") and California's Unfair Competition Law ("UCL"), and common-law negligence.[3] Chase now moves to dismiss each

[1] *See generally* Second Amended Complaint ("SAC") – ECF No. 24. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*

[3] *Id.* ¶¶ 50-97.

claim under Rule 12(b)(6), contending that she lacks standing because she was not a "borrower" on the Promissory Note and fails to state a plausible claim for relief.

The court finds that it can decide this matter without oral argument under Civil Local Rule 7-1(b) and vacates the June 16, 2016 hearing. The court concludes that Ms. Frank has standing as a borrower and states plausible claims under RESPA, the UCL, and common-law negligence.

## STATEMENT

### 1. The Franks mortgage their home

Mary and Joe Frank, husband and wife, mortgaged their home with Washington Mutual Bank in November 2006.[4] The loan principal was originally $385,000 — refinancing a previous loan of similar amount — and was secured by a first lien on the property.[5] Both Mary and Joe Frank signed the Deed of Trust granting the security interest but only Joe signed the Promissory Note.[6] Ms. Frank was accordingly not obligated to make loan payments, but she was otherwise obligated to "mortgage, grant and convey [her] interest in the [p]roperty under the terms of [the Deed of Trust.]"[7]

Washington Mutual "ceased operations" in September 2008.[8] JPMorgan Chase, the defendant here, acquired Washington Mutual's assets and "most of [its] liabilities . . .[,] including the loan at issue in this case."[9] Chase serviced the loan until November 2013, when it transferred loan-servicing responsibilities to M&T Bank.[10]

In the following years, Joe Frank became ill and subsequently died in September 2011.[11] Mr. Frank was unable to work while sick, "which caused the family to fall behind on their mortgage

[4] FAC ¶¶14-15.
[5] *Id.* ¶¶ 14-15.
[6] *Id.* ¶ 14; Deed of Trust – ECF No. 24-1, Ex. A at 2, 15.
[7] Deed of Trust – ECF No. 24-1, Ex. A at 11.
[8] FAC ¶ 17.
[9] *Id.*
[10] *Id.* ¶¶ 19, 38.
[11] *Id.* ¶ 20.

United States District Court
Northern District of California

payments."[12] Before he died, the Franks submitted a loan modification application with Chase.[13] Chase did not respond before his death.[14]

**2. Ms. Frank unsuccessfully attempts to assume the loan**

After her husband's death, Ms. Frank "took steps to assume the loan obligation."[15] She "attempted to communicate with [Chase] about the status of the application and about the loan, but [Chase] representatives refused to communicate with her because she was not the 'borrower.'"[16] Chase instead requested "copies of her husband's death certificate," which Ms. Frank supplied, and requested to speak with Mr. Frank, even after Ms. Frank provided the death certificate.[17] Chase also continued to send correspondence to the Franks' home "regarding options for assistance, specifically soliciting an application for a loan modification."[18]

Ms. Frank responded to Chase's loan modification solicitations "by submitting a new Home Affordable Modification Program (HAMP) application[.]"[19] In doing so, "she indicated to [Chase] that she was electing to assume the loan and cure the default through a loan modification."[20] When she contacted Chase about this application, "[Chase] representatives told her that because [Mr. Frank] did not leave a will, she had to file a probate case and become the executor of her husband's estate before [Chase] would communicate with her or allow her to assume and modify the loan."[21] Ms. Frank informed the Chase employees "that she and her late husband owned the

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* ¶ 21.
[16] *Id.* ¶ 22.
[17] *Id.*
[18] *Id.* ¶ 23.
[19] *Id.* ¶ 24.
[20] *Id.*
[21] *Id.* ¶ 26.

United States District Court
Northern District of California

home as husband and wife."[22] Chase, however, never provided Ms. Frank with a decision on her loan modification application.[23]

Ms. Frank then sought legal assistance.[24] Her attorney first contacted Chase by email in July 2013 "to explain that [Ms. Frank] was the sole title owner of the home, and to demand that [Chase] allow [her] to assume and modify the loan, and also to communicate with her regarding the account."[25] Chase did not respond.[26] Ms. Frank's attorney then notified the California Monitor for the National Mortgage Settlement.[27] Nevertheless, while her loan assumption and modification application remained outstanding, Chase recorded a Notice of Default in September 2013.[28] Her attorney then filed a complaint with the Office of the Comptroller of the Currency (the "OCC").[29]

Chase responded to Ms. Frank's OCC complaint.[30] Chase informed her "that it was not authorized to communicate with the attorney regarding the account."[31] Ms. Frank then submitted an authorization form (which Chase requested) and demanded "that [Chase] rescind the Notice of Default and that it consider [her] application to assume and modify the mortgage loan."[32] Chase responded by letter, requesting that Ms. Frank again complete the same authorization form, "but never provided a substantive response[.]"[33]

---

[22] *Id.* ¶ 27.
[23] *Id.* ¶ 26.
[24] *Id.* ¶ 28.
[25] *Id.* ¶ 29.
[26] *Id.*
[27] *Id.* ¶ 30.
[28] *Id.* ¶ 31-33; Notice of Default – ECF No. 24-1, Ex. B at 23-25.
[29] FAC ¶ 34.
[30] *Id.* ¶ 35.
[31] *Id.*
[32] *Id.* ¶ 36.
[33] *Id.* ¶ 37.

**3. Ms. Frank requests information to dispute charges on her account**

The servicing of Ms. Frank's loan was transferred to M&T Bank/Bayview Loan Servicing in November 2013.[34] After the transfer, Ms. Frank needed information from Chase "to dispute fees and other charges that had accrued on her account" caused by Chase's refusal to communicate or process her applications.[35] The information she sought also would have helped her demand that M&T Bank rescind the Notice of Default.[36]

Ms. Frank notified Chase by letter that it erred by not processing her applications and by charging certain fees.[37] She also requested information regarding the account.[38] Chase acknowledged the letter and subsequently responded, informing Ms. Frank that "it could not share any information about the account[.]"[39] Chase instead requested that Ms. Frank provide certain testamentary documentation and included its past letters requesting similar information.[40] Ms. Frank alleges that because Chase never provided her with the information she requested — information relevant to disputing charges on her account — she had "no documentation to dispute the charges" and her loan balance consequently increased.[41]

**4. Ms. Frank sues Chase**

Ms. Frank alleges four claims in her Second Amended Complaint ("SAC"): 1) breach of the implied covenant of good faith and fair dealing; 2) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*; 3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and 4) negligence.[42] Chase

---

[34] *Id.* ¶ 38.
[35] *Id.* ¶ 39.
[36] *Id.*
[37] FAC ¶ 40; Qualified Written Request – ECF No. 24-1, Ex. C at 27-29.
[38] *Id.*
[39] FAC 41; QWR Response Letter – ECF No. 24-1, Ex. D.
[40] FAC 41, QWR Response Letter – ECF No. 24-1, Ex. D.
[41] FAC ¶¶ 43-44.
[42] *Id.* ¶¶ 50-97.

moves to dismiss all of the claims, generally asserting that she lacks standing and fails to state a plausible claim for relief.[43]

**GOVERNING LAW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

[43] *See* Motion to Dismiss ("Motion") – ECF No. 27.

United States District Court
Northern District of California

## ANALYSIS

### 1. The court grants Chase's request for judicial notice

Chase requests that the court take judicial notice of the Promissory Note, Deed of Trust, Notice of Default, and Purchase and Assumption between Chase and the FDIC.[44] Ms. Frank did not oppose the request. The court takes judicial notice these documents as matters of the public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 959 (N.D. Cal. 2010) (taking judicial notice of the FDIC-Chase Purchase and Assumption Agreement). The court notes, however, that the Promissory Note attached to Chase's request appears to be the wrong promissory note and therefore has no bearing on the court's consideration.

### 2. Ms. Frank abandons her good faith and fair dealing claim

Ms. Frank asserts a claim for breach of the implied covenant of good faith and fair dealing.[45] Chase moves to dismiss the claim, and Ms. Frank does not oppose it.[46] Ms. Frank instead argues that the court should deny Chase's motion only on "the second through fourth causes of action."[47] The court treats the claim as abandoned and dismisses it with prejudice. *See Smith v. Harrington*, No. C 12-03533 LB, 2013 WL132465, at *10 (N.D. Cal. Jan. 9, 2013) (citing *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned two claims by not raising them in opposition to the County's motion for summary judgment); *Green Desert Oil Group v. BP West Coast Prods.*, No. C 11-02087 CRB, 2012 WL 555045, at *2 (N.D. Cal. Feb. 21, 2012) (plaintiffs' failure to defend subset of alleged breaches of contract deemed abandonment of those claims).

---

[44] Request for Judicial Notice – ECF No. 28.

[45] FAC ¶¶ 50-62.

[46] Motion at 5; Opposition at 8.

[47] Opposition at 8.

**3. RESPA claim**

**3.1 Ms. Frank has standing under RESPA**

As an initial matter, Chase argues that Ms. Frank lacks standing to bring her claims because she is not a "borrower."[48] It argues that, because she did not sign the promissory note, she is not a "borrower" entitled to RESPA (or other) protection. The court disagrees, however, and finds that Ms. Frank has standing.

The RESPA provisions that Ms. Frank sues under apply only to "borrowers" but RESPA does not define the term. *See* 12 U.S.C. § 2605; 12 C.F.R. §§ 1024.35(a), 1024.36(a). In light of this requirement, courts have dismissed RESPA claims where plaintiffs did not sign the mortgage documents or otherwise obligate themselves under the mortgage. *See Johnson v. Ocwen Loan Servicing*, 374 Fed. Appx 868, 873-74 (11th Cir. 2010) (holding that the plaintiff lacked standing because he "was not a borrower or otherwise obligated on the Ocwen loan[.]"); *Aldana v. Bank of Am., N.A.*, No. CV 14-7489-GHK FFMX, 2014 WL 6750276, at *3 (C.D. Cal. Nov. 26, 2014) (dismissing RESPA claim where the plaintiff was "not a borrower, did not assume obligations under the loan, and was not a third-party beneficiary of the [Deed of Trust]."); *Green v. Central Mortgage Co.*, No. 14-cv-04281-LB, 2015 WL 5157479, at *4-5 (N.D. Cal. Sep. 2, 2015) (collecting cases). Many such cases, however, are distinguishable from Ms. Frank's because the plaintiffs did not sign any of the mortgage documents, and thus were not obligated whatsoever. *Compare Ambers v. Wells Fargo Bank, N.A.*, No. 13-CV-03940 NC, 2014 WL 883752, at *5 (N.D. Cal. Mar. 3, 2014) (plaintiff did not sign the deed of trust or assert any other basis for standing); *Cabrera v. Countrywide Fin.*, No. C 11-4869 SI, 2012 WL 5372116, at *8 (N.D. Cal. Oct. 30, 2012) (dismissing RESPA claim where only husband was "signatory to the initial mortgage"); *Bianchi v. Bank of America, N.A.*, No. 12cv750-MMA (MDD), 2012 U.S. Dist. LEXIS 69260, at *3-4 (S.D. Cal. May 17, 2012) ("According to the Deed of Trust executed on July 16, 2003, the borrower to the loan and the sole signatory on the mortgage contract is 'Lewis S. Bianchi, a single man.'"); *with Signh v. Wells Fargo Bank N.A.*, No. CIV 2:11-cv-0401-GEB-

[48] *See* Motion at 6-7, 9.

United States District Court
Northern District of California

JFM (PS), 2011 WL 2118889, at *1 (E.D. Cal. May 27, 2011) (dismissing RESPA claim where the plaintiff had signed the deed, but not the note); *Wilson v. JPMorgan Chase Bank, N.A.*, No. CIV 2:09-863 WBSGGH, 2010 WL 2574032, at *1 (E.D. Cal. June 25, 2010) (same).

In contrast, in *Washington v. American Home Loans*, the plaintiff had standing to sue notwithstanding having failed to sign the promissory note. 2011 WL 11651320 at *2. In that case, the plaintiff sought a preliminary injunction under RESPA, the UCL, and a host of other laws. *Id.* The defendants argued that because the plaintiff did not sign the promissory note, she was not a "borrower" and lacked standing. *Id.* The plaintiff, however, was "obligated on the loan" because she "signed the deed of trust as a joint tenant with her son . . . [and therefore stood] to lose the equitable interest that she [had] in the subject property in the event of a default on her son's loan." *Id.* "As such, she [had] Article III standing to proceed with [the] action." *Id.*

Chase cites two cases from the Eastern District of California to support its claims. In *Signh v. Wells Fargo Bank N.A.*, the plaintiff lacked standing where the deed of trust identified the plaintiff and his wife as "borrower," but only the wife was on the promissory note. 2011 WL 2118889 at *1. Without much explanation, the court concluded that "the RESPA claim must fail because [the plaintiff was] not a borrower on the loan" and thus Wells Fargo had no obligation to respond to the plaintiff's qualified written request. *Id.* at *4.

Similarly, in *Wilson v. JPMorgan Chase Bank, N.A.*, the plaintiff lacked standing where she and her husband both signed the deed of trust as borrowers, but the plaintiff did not sign the promissory note. No. CIV 2:09-863 WBSGGH, 2010 WL 2574032, at *1 (E.D. Cal. June 25, 2010). The plaintiff "continually allege[d] that [her] deceased husband was the sole borrower of the loan, that plaintiff did not receive any loan proceeds, and that she only signed the Deed of Trust to 'perfect the security instrument.'" *Id.* at *6. Taking these allegations as true, the court dismissed the plaintiff's RESPA claim "because she explicitly allege[d] that she was 'not a borrower of the loan.'" *Id.* at *6, *9.

The court finds the defendant's reliance on *Singh* and *Wilson* unpersuasive for four reasons. First, the *Singh* court did not explain its reasoning and thus does not provide context for its decision. Second, unlike the plaintiff in *Wilson*, Ms. Frank does not allege that she is not a

United States District Court
Northern District of California

"borrower." To the contrary, she repeatedly asserts that she is a borrower under the mortgage terms (albeit, not a signatory to the note).

Third, the court agrees more with the reasoning in *Washington*. Ms. Frank is obligated under the mortgage because her interest in the property is at stake and, even if she was not obligated to make note payments,[49] the Deed of Trust (which calls her a "Borrower") obligates her to certain other conditions. For example, Ms. Frank grants her property interest "under the terms of [the Deed of Trust,]" indicating she must comply with the instrument's non-payment covenants (*e.g.* property and mortgage insurance, occupancy, preservation and maintenance, and other covenants).[50] The threat of default, possible foreclosure, and these additional covenants surely obligate her under the mortgage.

Fourth, the Franks owned the home as "husband and wife, with right of survivorship."[51] The loan, which was secured by the home (a joint asset), is community debt, *see In re Marriage of Fischer*, 78 Cal. App. 3d 556, 561 (1976), *disapproved of on other grounds by In re Marriage of Epstein*, 24 Cal. 3d 76, 85 n.2 (1979); 11 Witkin, Summary 10th (2005) Comm. Prop., § 99. Upon Mr. Frank's death, Ms. Frank became personally liable for making the note payments. *See* Cal. Prob. Code §§ 13550 *et seq.*; *Packard v. Arellanes*, 17 Cal. 525, 525 (1861); *In re Estate of Bonanno*, 165 Cal. App. 4th 7, 20 (2008). At the time of Chase's alleged misconduct — after Mr. Frank's death — Ms. Frank was therefore obligated to make the loan payments. *See Barzelis v. Flagstar Bank, F.S.B.*, 784 F.3d 971, 977-78(5h Cir. 2015) (reaching a similar conclusion based on Texas community-property law).

In this context, then, where Ms. Frank is a "Borrower" under the Deed of Trust and a surviving spouse obligated to make debt payments, she is a "borrower" for the purposes of RESPA (and her other claims), and therefore has standing.

---

[49] *See* Deed of Trust, § 13.

[50] Deed of Trust, §§ 5-10, 13.

[51] FAC ¶ 5.

United States District Court
Northern District of California

**3.2 Ms. Frank states a plausible RESPA claim**

Ms. Frank brings her RESPA claim under 12 U.S.C. § 2605(e)(1)(B) and 12 C.F.R. §§ 1024.35(a), 1024.36(a) for Chase's failure to adequately respond to her "qualified written request."[52] Chase moves to dismiss the claim on two grounds: 1) Ms. Frank is not a "borrower" and 2) it "acknowledge and responded to her RESPA request."[53] As described above, Ms. Frank is a "borrower" and, as described below, she states a plausible claim for relief.

RESPA provides that borrowers may inquire about federally related mortgages by making a "qualified written request." 12 U.S.C. § 2605(e)(1)(A). A qualified written request must describe why a borrower believes her account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower. *Id.* § 2605(e)(1)(B). RESPA provides plaintiffs with a private right of action for, among other wrongful acts, a loan servicer's failure to respond to a qualified written request for information about the loan. *Id.* 2605(f); *see Choudhuri v. Wells Fargo Bank, N.A.*, No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing *Patague v. Wells Fargo Bank, N.A.*, No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010)).

RESPA's regulations, known as "Regulation X," are codified at 12 C.F.R. § 1024 *et seq*. and detail a loan servicer's obligations to respond to a qualified written request. Under § 1024.35, a loan servicer must respond to a "notice of error" in specific ways. The servicer must acknowledge receipt of the request within five days of receipt. 12 C.F.R. § 1024.35(d). The servicer must also respond to the notice, either correcting the error or conducting a reasonable investigation and informing the borrower of such investigation. *Id.* § 1024.35(e). If the servicer conducts an investigation (opposed to correcting the error), it must "[1)] include[] a statement that the servicer has determined that no error occurred, [2)] a statement of the reason or reasons for this determination, [3)] a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, [4)] information regarding how the borrower can request

---

[52] FAC ¶¶ 63-75.

[53] Motion at 6.

such documents, and [5)] contact information, including a telephone number, for further assistance." *Id.* 1024(e)(1)(i)(B).

Similarly, under § 1024.36, a servicer must respond to a "request for information" in a specific manner. As above, the servicer must acknowledge receipt of the request within five days of receipt. *Id.* 1024.36(c). The servicer must also either respond by providing the information, or conduct a reasonable investigation and "provid[e] the borrower with a written notification that [1)] states that the servicer has determined that the requested information is not available to the servicer, [2)] provides the basis for the servicer's determination, and [3)] provides contact information, including a telephone number, for further assistance." *Id.* 1024.36(d)(1). The servicer need not comply with these requirements if it reasonably determines that "[t]he information requested is confidential, proprietary or privileged." *Id.* 1024.36(f)(1)(ii).

Here, Ms. Frank alleges that, through her attorney, she sent a qualified written request that Chase received on February 24, 2014.[54] The letter notified Chased of its alleged error in failing to process Ms. Frank's applications to assume and modify the loan and its error in charging certain fees in connection with the Notice of Default.[55] The letter also requested documents related to the loan account, including: assumption applications and related documentation; Making Home Affordable applications; and a detailed summary of specified account information.[56]

Chase acknowledged the written request on February 26, 2014 and responded on March 7, 2014.[57] Chase's response did not indicate a correction of the alleged errors and did not provide the information Ms. Frank requested.[58] Chase instead responded that it could not share the information requested because it was not authorized, and requested additional information from Ms. Frank — "the Appointment of Administrator, the Will and Testament which appoint[ed] [her] as Executor

[54] FAC ¶ 40.

[55] Qualified Written Request – ECF No. 24-1, Ex. C at 27.

[56] *Id.* at 27-28.

[57] FAC ¶¶ 41-42; QWR Response Letter – ECF No. 24-1, Ex. D at 32.

[58] *Id.*

of the Estate, or the Executor/Trust Agreement" — which, according to Chase's past letters, would allow it to process her assumption and loan modification applications.[59]

Although in the end Chase may be correct that its response is sufficient under RESPA, at this stage in the litigation, and viewing Ms. Frank's allegations in the light most favorable to her, she states a plausible claim for relief. For example, Chase's letter does not indicate Ms. Frank's right to request "documents relied upon by the servicer in reaching its determination" — *i.e.* Chase's policies or other documents rendering her unauthorized to receive information on the account. For a similar reason, the court cannot determine if Chase *reasonably determined* that the information is confidential (which appears to be the basis of Chase's "unauthorized" claim) — *i.e.* the court cannot determine that Mr. Frank's widow (Ms. Frank) could not have access to the information.

Chase does not provide any argument or case law to the contrary indicating that its response was sufficient. Chase merely says that it "acknowledged and responded to her RESPA request. The fact that [she] was unsatisfied with that response is not an actionable RESPA violation."[60] Chase is right that it "responded" and Ms. Frank even attaches its response to her complaint.[61] Chase does not, however, provide any argument — factual or legal — that its response is sufficient in light of the RESPA requirements stated above.

At this stage, Ms. Frank's allegations are therefore sufficient. She states a plausible claim for relief under RESPA.

**4. UCL claim**

Ms. Frank asserts a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*[62] The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal Bus. & Prof Code § 17200. "[Because] section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices

[59] *Id.* at 32-38.

[60] Motion at 6 (internal citation omitted).

[61] QWR Response Letter – ECF No. 24-1, Ex. D.

[62] FAC ¶¶ 76-85.

that are either 'unfair' or 'unlawful' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently under state law. *Chanber v. United Omahoa Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). A business practical may additionally be "unfair or fraudulent in violation of the UCL event if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003).

Here, Ms. Frank asserts claims under each of the UCL's three prongs, claiming that Chase's conduct was unlawful, unfair, and fraudulent.[63] Chase argues that Ms. Frank lacks standing under the UCL and fails to sufficiently allege unlawful, unfair, or fraudulent practices.[64] The court finds that Ms. Frank has standing and alleges sufficient facts to state a claim under the UCL's unlawful and unfair prongs, but not the law's fraudulent prong.

**4.1 Ms. Frank has standing to sue under the UCL**

The court first considers whether Ms. Frank has standing under the UCL. Any individual who has "suffered injury in fact and has lost money or property as a result of the unfair competition" may initiate suit. Cal. Bus. & Prof. Code § 17204. To have standing, a plaintiff must sufficiently allege that 1) he has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" and 2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (Cal. 2011) ("To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in

---

[63] *Id.* ¶¶ 79-82; Opposition at 19-21, 23.

[64] Motion at 6-9.

United States District Court
Northern District of California

fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.") (emphasis in original).

Here, Chase asserts that "the FAC does not clearly allege that [Ms. Frank] lost money or property as a result of any conduct by Chase."[65] That is not true. Ms. Frank alleges that because Chase never provided her with the requested RESPA information — information that "would have assisted her in disputing numerous charges on her account" in connection with her M&T Bank modification — "her loan modification capitalized all of the arrears."[66] In other words, her loan balance is higher now than it would have been had she received the RESPA information, which she would have been able to use to dispute charges and modify her loan with M&T Bank. This is a separate economic harm than that caused solely by the default itself, which, as Chase points out, was not caused by Chase's alleged misconduct.

Ms. Frank accordingly has standing under the UCL. The court now turns to her claims as they arise under each of the three separate UCL prongs.

**4.2 Unlawful**

The court first considers Ms. Frank's "unlawful" UCL claim. "To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Finuliar v. BAC Home Loans Servicing, L.P.*, No. C-11-02629 JCS, 2011 WL 4405659, at *9 (N.D. Cal. Sep. 21, 2011) (citing *People v. McKale*, 25 Cal. 3d 626, 635 (1979)). Here, the court already determined that Ms. Frank's RESPA claims survive this 12(b)(6) motion, and this means that her "unlawful" UCL claim survives, too.

The court also notes that, while Ms. Frank argues Chase violated California Civil Code section 2923.6 by recording the Notice of Default despite her pending "complete" modification application, she simultaneously concedes that she does not have a claim against Chase for this

---

[65] Motion at 8.

[66] FAC ¶¶ 43-45.

alleged wrongdoing. She also alleges that Chase specifically requested additional information for the loan modification (which she did not provide), and thus fails to plausibly allege that she submitted a "complete" application. *See* Cal. Civ. Code § 2923.6(h) ("[A]n application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.").

**4.3 Unfair**

The court next considers Ms. Frank's "unfair" UCL claim. As the district court in *Phipps v. Wells Fargo* explained:

> In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256, 106 Cal. Rptr. 3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr.3d 46.
>
> The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260–1261, 39 Cal. Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th at 581, 595–596, 101 Cal. Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 854, 128 Cal. Rptr.2d 389 (2002).
>
> . . .
>
> A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr.3d 46 (citing *Bardin*, 136 Cal. App. 4th at 1260, 39 Cal. Rptr.3d 634; *Davis*, 179 Cal. App. 4th at 594–595, 101 Cal. Rptr.3d 697)).
>
> . . .
>
> The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr.3d 46 (citing *Davis*, 179 Cal. App. 4th 597–598, 101 Cal. Rptr.3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr.3d 770 (2006)).

*Phipps v. Wells Fargo*, No. CV F 10-2025 LJO SKO, 2011 WL 302803, at *16 (E.D. Cal. Jan.27, 2011).

Here, the conduct complained of — Chase's refusal to provide information, correct its alleged errors, or proceed past its requests for additional testamentary documentation (despite multiple modification solicitations) — is 1) tethered to RESPA, the policy of which is to protect and provide borrowers with information, and 2) substantially injurious to Ms. Frank, who stood to lose her home. Chase has not shown any countervailing interests at stake. Although the court can fathom the interests of privacy and confidentiality, and that Ms. Frank may have been able to avoid the injury had she provided Chase with the documentation it requested, Chase raises none of these arguments in its motion or reply. It instead focuses on a test for "unfair" used in "the context of an unfair competition claim by a competitor[.]" *See Puentes v. Wells Fargo Home Mortg., Inc.* 160 Cal. App. 4th 638, 646 (2008). Chase provides no argument for applying this test here — in a consumer context — and, without more, the court thinks it inapplicable.

Ms. Frank's "unfair" UCL claim consequently survives.

**4.4 Fraudulent**

The court finally considers Ms. Frank's "fraudulent" UCL claim. "[T]o state a claim under the UCL based on fraudulent conduct, [a p]laintiff must allege, with particularity, facts sufficient to establish that the public would likely be deceived by Defendants' conduct." *Finuliar*, 2011 WL 4405659, at *10. "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public 'are likely to be deceived.'" *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)) (internal quotation marks omitted). Also, "UCL claims premised on fraudulent conduct trigger the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure." *Finuliar*, 2011 WL 4405659, at *9 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is

United States District Court
Northern District of California

false." *Vess*, 317 F.3d at 1097 (quoting *Decker v. Glenfed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

Here, Ms. Frank alleges two bases for her "fraudulent" UCL claim. First, she alleges that Chase "falsely stated in its Notice of Default that it had 'tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure . . . .'"[67] Ms. Frank alleges that this is false because Chase "was aware that Joe Frank was deceased . . . [and] was therefore on notice that Joe Frank did not receive any correspondence that it sent to the home."[68] She further asserts that Chase "refused to communicate with [her] to 'discuss [her] financial situation and to explore options for [her] to avoid foreclosure' other than to tell her that [Chase] would not discuss these things with her unless she filed a probate case."[69] In conjunction with her other allegations — *i.e.* that default occurred approximately two years prior to the Notice of Default and that she repeatedly spoke with Chase — her claim fails as pled. Although Chase's refusal to communicate with her may have been improper, Ms. Frank does not plausibly show that this statement of diligence amounts to fraud under the UCL.

Second, she alleges that Chase "misrepresented the requirements that [she] must meet in order to assume and modify the loan, such as falsely stating that she must file a probate case, knowing that she held title to the property with Joe Frank 'as husband and wife with right of survivorship' and therefore title passed automatically without probate."[70] Chase's letters — which Ms. Frank attaches to the SAC — contradict this claim. The letters indicate that Chase needed the additional documentation to give Ms. Frank access to the account.[71] Ms. Frank does not allege that this is a false statement (*i.e.* that it is not Chase's policy to require this type of documentation). The letters also indicates that Ms. Frank could apply to assume the loan by supplying Chase with "a copy of

---

[67] FAC ¶ 81.

[68] *Id.* ¶ 33.

[69] FAC ¶ 33.

[70] FAC ¶ 81.

[71] QWR Response Letter – ECF No. 24-1, Ex. D at 32-33, 35.

the probated and recorded will . . . [or] a copy of the Succession, the Judgment of Possession, or Letters of Testamentary, along with any accompanying legal documentation . . . ."[72] To the extent Ms. Frank bases her fraud claim on these statements, she has not shown they are false. If her claim is based on Chase falsely stating that she *must* file a probate case, she has failed to identify with particularity who made that statement, when, where, and how.

Ms. Frank therefore fails to state a claim under the UCL's "fraudulent" prong.

**5. Negligence**

Ms. Frank's final claim is based in negligence: she asserts that Chase was negligent in failing to communicate with her and failing to process her loan assumption and modification applications.[73] The elements of a negligence claim are 1) the existence of a duty to exercise due care, 2) breach of that duty, 3) causation, and 4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). Chase moves to dismiss only on the basis that it did not owe Ms. Frank a duty of care and thus the court limits its analysis to this element.[74]

The court has previously addressed this issue in similar cases and concluded that whether a lender has a duty of care requires the balancing of the non-exhaustive factors listed in *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1098 (1991). *See Rowland v. JPMorgan Chase Bank*, No. C 14-00036 LB, 2014 WL 992005, at *8-9 (N.D. Cal. Mar. 12, 2014); *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, No. C 13-05881 LB, 2014 WL 890016, at *14-17 (N.D. Cal. Mar. 3, 2014). As the court has explained:

> Under California law, as Defendants point out, lenders generally do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money." *See Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citations omitted). To determine "whether a financial institution owes a duty of care to a borrower-client," courts must balance the following non-exhaustive factors:

[72] *Id.* at 37.

[73] FAC ¶¶ 86-97.

[74] Motion at 9-11.

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.
>
> *Id.* at 1098 (quotation marks and citations omitted).

*Rowland*, 2014 WL 992005, at *8. In *Rijhwani*, the court found that *Garcia v. Ocwen Loan Servicing, LLC*, is persuasive and instructive. No. C 10–0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010) (finding that a servicer had a duty of care to a borrower under the *Nymark* factors). As the court explained, in *Garcia*:

> the defendant had [at least twice] cancelled the trustee's sale to allow time for processing the plaintiff's application. The defendant asked the plaintiff to submit various documents in connection with the loan modification request. The plaintiff did so, but upon receiving the documents, the defendant routed them to the wrong department. Later, the plaintiff's agent received a recorded message indicating documents were missing, but the message did not identify which ones were missing. For the next several weeks, the plaintiff's agent repeatedly tried to contact the defendant to determine which documents were missing, but he was unable to speak with any of the defendant's employees. The plaintiff's agent was finally able to actually speak with one of the defendant's employees, but it was too late. The employee informed the plaintiff's agent that the home had been sold at a trustee's sale the day before.
>
> The court concluded that at least five of the six factors cited above weighed in favor of finding that the defendant owed the plaintiff a duty of care in processing the plaintiff's loan modification application. [*Garcia*, 2010 WL 1881098,] at *3-4.

*Rijhwani*, 2014 WL 890016, at *16-17.

Applying the *Nymark* factors here, Ms. Frank plausibly alleges that Chase owed her a duty to exercise ordinary care. First, the loan assumption and modification was intended to affect Ms. Frank because it would have resulted in her assuming, modifying, and curing the loan default. She plausibly alleges that the solicitations were intended to affect her — not Mr. Frank — by these facts: she alleges that even "[a]fter [Chase] was on notice that Joe Frank was deceased, it continued to send correspondence . . . soliciting an application for a loan modification."[75] Ms. Frank was also on the Deed of Trust and appears to have spoken to Chase about the loan prior to these solicitations,[76] raising the plausible inference that Chase knew she lived at the home (and

[75] FAC ¶ 23.

[76] *Id.* ¶ 22.

not Mr. Frank). This is sufficient to plausibly suggest that the loan assumption and modification applications resulting from these solicitations were intended to affect Ms. Frank. Second, the harm of mishandling the applications was foreseeable because it would prevent Ms. Frank from taking over the loan, curing the default, and preventing further penalties. It is also foreseeable that she would suffer emotional damage at the risk of losing her family home. Third, the injury was certain to occur because additional penalties would accrue and capitalize while the loan was in default. Fourth, the connection between Chase's alleged misconduct (*i.e.* mishandling the applications) and the injury suffered (*i.e.* additional penalties, emotional damage) is close. Fifth, Chase's conduct would subject it to moral blame if it did in fact act wrongfully. And sixth, requiring a duty in this context would help prevent future harm.

Ms. Frank accordingly plausibly alleges that Chase owed her a duty to properly handle and process her loan assumption and modification applications.

**CONCLUSION**

The court denies Chase's motion with respect to Ms. Frank's claims under RESPA, the UCL's unlawful and unfair prongs, and common-law negligence. The court grants Chase's motion with respect to her claim for breach of the implied covenant of good faith and fair dealing, which it dismisses with prejudice. The court also grants Chase's motion with respect to her claim under the UCL's fraudulent claim, which it dismisses without prejudice. Ms. Frank may file an amended complaint within 14 days. The court continues the case-management conference to June 30, 2016 at 11:00 a.m.

**IT IS SO ORDERED.**

Dated: May 31, 2016

LAUREL BEELER
United States Magistrate Judge