Kari Rudd (SBN 268288)
Juliana Fredman (SBN 282924)
Bay Area Legal Aid
1035 Market Street, 6th Fl.
San Francisco, CA 94103
Phone: (415) 982-1300
Fax: (415) 982-4243
KRudd@baylegal.org

Attorneys for Plaintiff
MARY FRANK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| MARY FRANK | ) | Case No. 15-cv-05811-LB |
|---|---|---|
| Plaintiff, | ) ) | SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND |
| vs. | ) ) | DAMAGES; AND DEMAND FOR JURY TRIAL |
| J.P. MORGAN CHASE BANK, N.A., | ) ) | 1. Violation of RESPA; |
| Defendant. | ) ) | 2. UCL; 3. Negligence. |

Plaintiff MARY FRANK ("Plaintiff") alleges as follows:

## I.   INTRODUCTION

1.   Plaintiff brings this complaint against her former mortgage servicer, J.P. MORGAN CHASE BANK, N.A. ("CHASE" or "Defendant") for its refusal to communicate with her after the death of her husband, Joe Frank, and frustrating her ability to cure the default on the loan secured by the Deed of Trust in which she is named as a borrower; refusing to recognize her assumption of the loan; initiating foreclosure proceedings on her home while her complete application for assistance was pending; and causing significant damages including the accrual of excessive interest and fees on the loan secured by Plaintiff's real property, and severe emotional distress.

2.   Plaintiff brings this action under the Real Estate Settlement Procedures Act for Defendant's refusal to respond to her Notice of Error and Request for Information, part

1

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

of a pattern and practice of conduct which caused her to suffer actual damages. Plaintiff also brings this action pursuant to California Business and Professions Code Section 17200 *et. seq.*, for Defendant's unfair and unlawful business practices which caused her to suffer economic injury. Finally, Plaintiff brings this action for negligence, as Defendant breached its duty to communicate with her and exercise ordinary care in processing her assumption and loan modification.

## II.   PARTIES

3. At all times relevant in this Complaint, Plaintiff was and is a competent adult who resides in Contra Costa County, California.

4. At all times relevant in this Complaint, Plaintiff has been the title owner of the property located at 1799 Bonita Road, San Pablo, CA 94806, in Contra Costa County ("the home"), a single-family home, and she has occupied the home as her principal residence.

5. Plaintiff is a widow. Her husband of 46 years, Joe Frank, passed away on September 3, 2011. Joe Frank did not have a will, and there was never a probate case related to his estate. Plaintiff and her husband owned their home "as husband and wife with right of survivorship." Therefore, by operation of the deed, Plaintiff became the sole title owner of the home upon Joe's death.

6. Defendant, J.P. MORGAN CHASE BANK, N.A. ("CHASE"), is a National Bank located in Columbus, Ohio, and doing business in the State of California. It is registered as a National Bank with the Office of the Comptroller of the Currency.

7. CHASE was the mortgage servicer for Plaintiff's loan at all times relevant in this Complaint. Upon information and belief, servicing of Plaintiff's loan transferred to M&T Bank/Bayview Loan Servicing on November 16, 2013.

## III.   JURISDICTION

8. Jurisdiction in this Court is proper pursuant to 28 USC § 1331, as this case involves federal claims under the Real Estate Settlement Procedures Act. This Court has

supplemental jurisdiction over Plaintiff's related state-law claims under 28 USC § 1367(a), because the state-law claims are so closely related to the original-jurisdiction claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. This case also involves an amount at issue greater than seventy-five thousand dollars and there exists complete diversity between the parties.

10. Venue is proper in this Court because Plaintiff's home is located in Contra Costa County, California and the acts alleged in this Complaint occurred in Contra Costa County, California. Plaintiff's injuries and damages also occurred in Contra Costa County California. CHASE has purposefully established minimum contacts in California by doing business in the state, and maintenance of this action does not offend traditional notions of fair play and substantial justice.

### IV. INTRA-DISTRICT ASSIGNMENT

11. Pursuant to L.R. 3-2 (c) & (d), this action should be assigned to the San Francisco Division or the Oakland Division, because a substantial portion of the events or omissions that give rise to Plaintiff's claims occurred in Contra Costa County and the real property, which is the subject of this action, is located in Contra Costa County.

### V. FACTUAL BACKGROUND

12. Plaintiff's late husband, Joe Frank, was the borrower on a loan note bearing the account number 3011305897, which is secured by a first lien on the home in the form of a Deed of Trust recorded in the Contra Costa County Recorder's office ("the mortgage loan"). Both Plaintiff and her late husband are named as borrowers in the Deed of Trust. The Deed of Trust is attached as Exhibit A.

13. The mortgage loan was originated on or about November 2, 2006 by the originating lender, Washington Mutual Bank, FA (hereinafter "Washington Mutual"). The original principal balance of the mortgage loan was $385,000. The loan refinanced a

previous Washington Mutual loan with approximately the same balance. Because Plaintiff and her husband were married at the time of origination, the loan is community debt.

14. Upon information and belief, at all relevant times, Washington Mutual regularly extended consumer credit payable by agreement in more than four installments and/or for which payment of a finance charge was required; originated one or more mortgages in any 12 month period through a mortgage broker; was the entity to whom the mortgage loan was initially payable on the face of the loan documents; made or invested in mortgage loans aggregating more than one million per year; and intended to sell the mortgage loan on the secondary market to the Federal National Mortgage Association ("Fannie Mae"), the Government National Mortgage Association ("Ginnie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac") or another financial institution from which the mortgage loan would be purchased by Freddie Mac. Therefore, the mortgage loan is a "federally related mortgage loan" pursuant to 12 USC § 2602.

15. On September 25, 2008, Washington Mutual ceased operations. JPMorgan Chase (the parent company of CHASE) acquired the assets and most of the liabilities of Washington Mutual, including the loan at issue in this case.

16. Upon information and belief, CHASE services numerous "federally-related mortgage loans" within the meaning of Regulation X, 12 C.F.R. Section 1024.2.

17. At all relevant times before the transfer of servicing on November 16, 2013, CHASE was the entity responsible for servicing the mortgage loan in this case. This means that CHASE received scheduled periodic payments from Plaintiff and/or her husband, including amounts for escrow accounts, and made payments of principal and interest and such other payments as may be required pursuant to the terms of the loan agreement.

18. After battling a serious illness for several years, Plaintiff's husband suffered cardiopulmonary arrest and passed away on September 3, 2011. During the time of his illness, he had been unable to work, which caused the family to fall behind on their

4

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1 mortgage payments. Prior to his death, Plaintiff and her husband submitted an application
2 for a loan modification to CHASE, but they had not received a decision on that application
3 before he passed.
4     19.    When Joe Frank passed away, Plaintiff was his successor-in-interest and
5 took steps to assume the loan obligation. The due-on-sale clause was not triggered by
6 Plaintiff's assumption of the loan note, as it is a protected transfer under the Garn-St.
7 Germain Depository Institutions Act. 12 U.S.C. § 1701j-3(d).
8     20.    After her husband's death, Plaintiff attempted to communicate with CHASE
9 about the status of the application and about the mortgage loan, but CHASE
10 representatives refused to communicate with her because she was not the "borrower."
11 CHASE repeatedly asked Plaintiff to submit copies of her husband's death certificate, and
12 she complied with these requests. She also endured numerous phone conversations in
13 which CHASE representatives asked to speak to her husband, months after she had
14 provided a copy of his death certificate. This was extremely upsetting and distressing to
15 Plaintiff, who was still grieving the loss of her husband.
16     21.    After CHASE was on notice that Joe Frank was deceased, it continued to
17 send correspondence to Plaintiff's home regarding options for assistance, specifically
18 soliciting an application for a loan modification.
19     22.    Because she could not get any information from CHASE regarding the
20 status of the application for assistance that she and her husband had submitted before his
21 death, Plaintiff responded to these solicitations by submitting a new Home Affordable
22 Modification Program (HAMP) application on or about October 15, 2012. In doing this,
23 she indicated to CHASE that she was electing to assume the loan and cure the default
24 through a loan modification. The application packet included only Plaintiff's income and
25 financial information, and Plaintiff signed the application, both of which indicated that
26 Plaintiff would be taking over responsibility for the payments on the loan.
27

1       23.     Upon information and belief, Plaintiff qualified for a HAMP modification at

2 the time she submitted her October 2012 application.

3       24.     However, Plaintiff never received a decision on the October 2012

4 application. When she contacted CHASE to inquire about the status of her application,

5 CHASE representatives told her that because Joe did not leave a will, she had to file a

6 probate case and become the executor of her husband's estate before CHASE would

7 communicate with her or allow her to assume and modify the loan.

8       25.     Plaintiff informed CHASE employees that she and her late husband owned

9 the home as husband and wife. CHASE was also on notice of Plaintiff's ownership interest

10 because it is stated in the recorded Deed as "husband and wife with right of survivorship."

11       26.     Not knowing where to turn when CHASE would not communicate with her,

12 Plaintiff paid multiple foreclosure rescue scammers thousands of dollars in up-front fees

13 for help with the loan modification process.

14       27.     Eventually, Plaintiff sought legal assistance from Bay Area Legal Aid. Her

15 attorney contacted a representative of CHASE via email on July 10, 2013 to explain that

16 Plaintiff was the sole title owner of the home, and to demand that CHASE allow Plaintiff

17 to assume and modify the loan, and also communicate with her regarding the account.

18 Plaintiff's attorney included a signed Making Home Affordable Program ("MHA") Third

19 Party Authorization form with this email correspondence. CHASE did not respond to

20 Plaintiff or her attorney.

21       28.     Plaintiff's attorney then brought this issue to the attention of the California

22 Monitor for the National Mortgage Settlement and continued to correspond with that office

23 during its investigation of Plaintiff's complaint.

24       29.     CHASE recorded a Notice of Default on September 13, 2013, initiating the

25 foreclosure process on the home. At this time, Plaintiff was still waiting for a decision

26 from CHASE regarding her application to assume and modify the loan. A true and correct

27 copy of the Notice of Default is attached as Exhibit B.

30. The Declaration of Compliance attached to the Notice of Default falsely states that "[t]he mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure . . ." *See* attached Ex. B.

31. CHASE had not "tried with due diligence" to communicate with either borrower. CHASE was aware that Joe Frank was deceased, as Plaintiff had repeatedly informed CHASE of this fact and submitted several copies of his death certificate at CHASE's request. CHASE was therefore on notice that Joe Frank did not receive any correspondence that it sent to the home. CHASE also refused to communicate with Plaintiff to "discuss [Plaintiff's] financial situation and to explore options for [Plaintiff] to avoid foreclosure" other than to tell her that CHASE would not discuss these things with her unless she filed a probate case *See* Ex. B. Therefore, CHASE knowingly made a false statement in its Declaration of Compliance.

32. Plaintiff's attorney submitted a complaint to the Office of the Comptroller of the Currency ("OCC") related to CHASE's refusal to communicate with Plaintiff regarding her application to assume and modify the mortgage loan.

33. CHASE responded to the OCC complaint in a letter to Plaintiff's attorney dated October 9, 2013, stating that it was not authorized to communicate with the attorney regarding the account. CHASE provided an authorization form to complete and return. This form was different than the MHA Third Party Authorization form Plaintiff had submitted to CHASE on or about July 10, 2013.

34. Plaintiff completed the new authorization form, as CHASE requested, and her attorney provided it to CHASE in a letter sent by certified mail on October 21, 2013. The letter demanded that CHASE rescind the Notice of Default and that it consider Plaintiff's application to assume and modify the mortgage loan. Enclosed with this letter, Plaintiff's attorney also provided a copy of Plaintiff's Affidavit of Death of Spouse, which

1 Plaintiff recorded on her property records to reflect that her husband had passed away,
2 making her the sole title owner of the home.

3      35.     CHASE sent another letter dated October 29, 2013 to Plaintiff's attorney,
4 requesting the same authorization form CHASE already received on October 25, 2013
5 (according to the certified mail return receipt), but never provided a substantive response to
6 the October 21, 2013 demand letter.

7      36.     The servicing of Plaintiff's loan transferred to M&T Bank/Bayview Loan
8 Servicing on or about November 16, 2013.

9      37.     After servicing transferred, Plaintiff needed information from her CHASE
10 servicing file in order to dispute fees and other charges that had accrued on her account as
11 a result of CHASE's refusal to communicate with her and process her assumption and loan
12 modification application. Specifically, she needed copies of the application materials that
13 she had previously submitted to CHASE, which she unfortunately no longer had in her
14 possession. This documentation would also allow Plaintiff to demonstrate that CHASE
15 engaged in dual-tracking when it recorded the Notice of Default on her property record, so
16 that she could demand that M&T/Bayview rescind the Notice of Default.

17      38.     Through her attorney, Plaintiff submitted a Notice of Error and Request for
18 Information (also known as a Qualified Written Request) (hereinafter "NOE/RFI")
19 pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e), to
20 CHASE by certified mail on February 18, 2014. The NOE/RFI included a signed
21 authorization from Plaintiff. CHASE received the NOE/RFI on February 24, 2014
22 according to the Certified Mail Return Receipt. A true and correct copy of the RFI, and
23 certified mail return receipt, is attached as Exhibit C.

24      39.     CHASE sent a letter dated February 27, 2014, merely acknowledging that it
25 had received the NOE/RFI. However, CHASE never provided a substantive response to
26 the NOE, and never provided the documents and information requested in the RFI.

27

8

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

40. In a second letter dated March 7, 2014, CHASE indicated that it would not respond to the RFI or NOE because it could not share any information about the account unless Plaintiff could provide "a copy of the Appointment of Administrator, the Will and Testament which appoints [her] as Executor of the Estate, or the Executor/Trust Agreement." A true and correct copy of this letter is attached as Exhibit D.

41. As a result of CHASE's failure to comply with RESPA's requirement that it provide information in connection with the servicing of the loan, Plaintiff never obtained the documents and information that she requested. These documents would have assisted her in disputing numerous charges on her account after servicing transferred to Bayview/M&T.

42. Because she had no documentation to dispute charges, her loan modification capitalized all of the arrears into a new principal balance of $495,471.46. This is more than $110,000 higher than the original principal balance on the mortgage loan.

43. Further, as a result of Defendant's failure to comply with RESPA's requirement that it provide information in connection with the servicing of the loan, Plaintiff could not prove to Bayview/M&T that CHASE had engaged in illegal dual-tracking. Upon information and belief, Bayview/M&T would have promptly rescinded the Notice of Default ("NOD") if it had received a copy of Plaintiff's complete application to CHASE, which would demonstrate that CHASE's recordation of the NOD was in violation of the law. *See* Cal. Civ. C. § 2923.6. Instead, the NOD remained on her property records for more than a year, until January 8, 2015, shortly after her Bayview/M&T loan modification became permanent.

44. During the time that the Notice of Default was active on her property records, Plaintiff was continuously harassed by unscrupulous foreclosure rescue scammers and investors interested in bidding on the property at the trustee sale. Not only did she receive countless solicitations in the mail for questionable services, she also had strangers knocking on her door, presumably to sell foreclosure rescue services or trying to get a look

1 at her house before it went up for auction. These frequent unwelcome intrusions were
2 extremely distressing to Plaintiff.

3     45.    In addition to monetary harm, Plaintiff has suffered severe emotional
4 distress as a result of CHASE's actions and inactions. Plaintiff's health has suffered as a
5 direct result of this emotional distress. Plaintiff was already grieving the loss of her
6 husband of 46 years when she reached out to CHASE to assume and modify the loan so
7 that she could cure the default. CHASE's ongoing refusal to give her information regarding
8 the loan; repeated requests to speak to Joe after Plaintiff told CHASE that he was
9 deceased; repeated requests that she submit her Joe's death certificate; and its stonewalling
10 of assumption and modification compounded her grief and caused her years of suffering.

11     46.    Between September 2011 and November 2014, Plaintiff lived in constant
12 fear losing her home and felt a great deal of stress and sadness. Plaintiff also endured a
13 continuous stream of unwanted solicitations from foreclosure rescue scammers and
14 investors during the year that the NOD was recorded on her property records, which
15 caused additional distress until January, 8 2015. CHASE caused this ongoing emotional
16 distress when it recorded the NOD and then failed to provide the information that Plaintiff
17 needed to convince her new servicer to promptly rescind the NOD when servicing
18 transferred.

19     47.    Plaintiff has also suffered other monetary damages in an amount to be
20 proven at trial, including, but not limited to: money paid to foreclosure rescue scammers
21 that was not refunded; costs of repeatedly faxing documents to CHASE or sending
22 documents by certified or overnight mail; improper fees and other charges which accrued
23 on her account as a result of prematurely referring the account to foreclosure; and costs
24 incurred in sending documents to her attorney or traveling to meet with her attorney in
25 order to respond to CHASE's unlawful actions.
26 //
27 //

10

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### REAL ESTATE SETTLEMENT PROCEDURES ACT

48. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

49. The loan is a "federally-related mortgage loan" as that term is defined under 12 USC § 2602, as it is secured by a first lien on residential real property, which is a single-family home, made by a lender that is regulated by an agency of the Federal Government, and which was intended to be sold to a government-sponsored entity, and which was sold to the Federal Home Loan Mortgage Corporation ("Freddie Mac').

50. The loan is therefore subject to the Real Estate Settlement Procedures Act ("RESPA"), 12. USC §§ 2601 *et. seq.,* and the regulations promulgated under that statute, Regulation X, 12 CFR § 1024.41 *et seq.*

51. CHASE is therefore a "servicer" of a "federally related mortgage loan" as these terms are defined under RESPA, 12 USC §§ 2605(i)(2)-(3), and is therefore subject to the requirements of RESPA and Regulation X.

52. A borrower may file an action pursuant to 12 USC § 2605(f), which provides a borrower the right to enforce certain provisions of RESPA, including Regulation X § 1024.41. There is no definition limiting the term "borrower" within RESPA or Regulation X.

53. Plaintiff is a borrower according to the Deed of Trust. *See* Exhibit A. Therefore, she is entitled to enforce the aforementioned provisions of RESPA and Regulation X.

54. In the alternative, Plaintiff is a borrower because she is obligated under the Note as community debt, and owned the home with her husband with right of survivorship, therefore title passed to her automatically upon his death. The Fifth Circuit held that a spouse who was not obligated individually on a note was still a borrower for purposes of

11

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1  RESPA because the note was community debt and the property transferred without
2  administration. *See Barzelis v. Flagstar Bank*, 784 F. 3d 971 (5th Cir. 2015.) This same
3  reasoning would apply to Plaintiff.

4      55.    In the alternative, Plaintiff stepped into the shoes of Joe Frank when she
5  elected to assume the Note, and thereby took on his rights and obligations, including his
6  rights as a borrower under RESPA.

7      56.    Plaintiff sent CHASE a "qualified written request," also known as a "notice
8  of error" and a "request for information," within the meaning of RESPA, 12 USC §
9  2605(e)(1)(B) and Reg. X, 12 USC §§ 1024.35(a) and 1024.36(a), which included
10 sufficient information and detail to enable the servicer to identify the name and account of
11 the borrower, as well as a statement of reasons as to how the account was in error.

12     57.    CHASE violated Reg. X when it failed to provide the information and
13 documents requested in Plaintiff's RFI, and failed to respond to the NOE. 12 USC § 2605.

14     58.    As a result of these violations, Defendant is liable for actual damages
15 pursuant to 12 USC § 2605(f)(1)(A). Plaintiff's actual damages include, without limitation:
16 costs of transportation and other expenses incurred while attempting to obtain CHASE's
17 compliance with RESPA; additional interest and other charges added to the loan balance
18 during CHASE's delay (and never removed because Plaintiff could not obtain information
19 she needed from CHASE to send to her new servicer in order to dispute the charges); and
20 severe emotional distress.

21     59.    Upon information and belief, CHASE has a "pattern and practice" of failing
22 to respond to Notices of Error or Requests for Information from borrowers who are
23 borrowers under a Deed of Trust, but not obligors on the note. This subjects CHASE to
24 statutory damages up to $2,000 pursuant to 12 USC § 2605(f)(1)(B).

25     60.    If Plaintiff prevails in this action, CHASE is also liable for reasonable
26 attorneys' fees and costs pursuant to 12 USC § 2605(f)(3).

27

SECOND CAUSE OF ACTION:
INJUNCTION AGAINST UNFAIR BUSINESS PRACTICES, CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200.

61. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

62. Business and Professions Code Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

63. Business and Professions Code Section 17203 provides that any person who engages in such practices "may be enjoined in any court of competent jurisdiction."

64. CHASE engaged in unlawful and unfair acts and practices when it:

   a. refused to recognize Plaintiff's assumption of the loan Note;

   b. refused to communicate with Plaintiff regarding the loan, thereby frustrating her efforts to cure the default;

   c. refused to process Plaintiff's application to assume and modify the loan, thereby frustrating her efforts to cure the default;

   d. recorded a Notice of Default while Plaintiff's complete application for assistance was pending;

   e. refused to provide information and documents regarding the loan in response to Plaintiff's RFI, thereby frustrating her efforts to dispute wrongful charges on her account after servicing transferred to Bayview/M&T and to convince Bayview/M&T to rescind the NOD that Chase recorded on her property.; and

   f. refused to respond to Plaintiff's NOE.

65. These acts and practices are "unlawful" as they are in violation of state and federal law. Specifically, when CHASE recorded the Notice of Default, it violated California Civil Code Section 2923.6, because Plaintiff had submitted a complete application for assistance and CHASE had not yet made a decision on that application and

13

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1  had not provided Plaintiff a response. When CHASE failed to respond to Plaintiff's RFI
2  and NOE, it violated RESPA, as explained above.

3      66.    CHASE's conduct was unfair in that it violated the public policy underlying
4  federal and state laws and regulations that prohibit "dual tracking," which are designed to
5  protect borrowers from premature and unnecessary foreclosures, and preserve
6  neighborhood stability by keeping families in their homes. *See* Cal. Civ. Code § 2923.4(a).
7  *Also see* Sen. Floor Analysis of Assemb. Bill No. 278 ("AB 278 Analysis"), Conf. Rep.
8  No. 1, Reg. Sess., at 26 (Cal. July 2, 2012). CHASE's conduct is also unfair in that its
9  refusal to process a widow's loan modification application is inconsistent with public
10 policy laid out in administrative guidance for the federal Making Home Affordable
11 Program, and guidelines promulgated by Fannie Mae and Freddie Mac, which direct
12 servicers to allow successors in interest, such as Plaintiff, to apply to assume and modify a
13 loan after the death of a borrower. *See* Freddie Mac Servicing Guide, Chapter B65.28
14 (amended June 3, 2014); Fannie Mae Single Family 2015 Servicing Guide at D1-4.1-02:
15 Allowable Exemptions Due to the Type of Transfer (amended Nov. 12, 2014); Making
16 Home Affordable Handbook, Version 4.4 § 8.8.

17     67.    CHASE's conduct not only offends public policy, but it causes substantial
18 injury to Plaintiff and other consumers, and has no utility to outweigh this substantial
19 harm.

20     68.    Plaintiff has lost money in an amount to be proven at trial as a direct and
21 proximate result of Defendant's unlawful and unfair business practices, including, but not
22 limited to, the excess interest, fees, and charges that CHASE added to the loan balance as a
23 direct and proximate result of those practices. This significantly increased the lien secured
24 by Plaintiff's real property and therefore diminished the value of her property.

25     69.    Therefore, Plaintiff may bring this action as a "person who has suffered
26 injury in fact and has lost money or property as a result of unfair competition." Bus. &
27 Prof. Code § 17204.

## THIRD CAUSE OF ACTION:
## NEGLIGENCE

70. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

71. California law imposes a duty of ordinary care on all persons as a general rule. *See* Cal. Civ. C. § 1714; *Weirum v. RKO General, Inc.* 15 Cal. 3d. 40, 46 (1975). Exceptions to this general rule must be supported by public policy. *See Rowland v. Christian*, 69 Cal. 2d. 108, 111-13 (1968).

72. The conduct at issue in this case falls outside a bank's conventional role as a lender of money, therefore the exception articulated in *Nymark v. Heart Fed. Sav. & Loan Assn.* does not apply. 231 Cal. App. 3d 1089 (1991).

73. Servicers such as CHASE have a duty to exercise ordinary care in the loan modification process. *See Alvarez v. BAC Home Loans Servicing LP.*, 176 Cal. Rptr. 3d 304 (Cal. Ct. App. 2014); *McGarvey v. JP Morgan Chase Bank, N.A.*, No. 2:13-cv-01099-KJM-EFB, 2013 U.S. Dist. LEXIS 147542, at *18 (E.D. Cal. Oct. 10, 2013); *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 U.S. Dist. LEXIS 45375, at *10 (N.D. Cal. May 6, 2010).

74. CHASE solicited a loan modification application after learning of Joe Frank's death, and it was foreseeable that Plaintiff would want to take advantage of the opportunity to assume the loan and cure the default through a modification. As the only person who would possibly receive CHASE's solicitations, and the only person who could apply for a loan modification, CHASE could have only intended that the mitigation process would affect Plaintiff.

75. When Plaintiff took the step of submitting an application in October 2012, thereby electing to assume the loan, CHASE failed to exercise ordinary care in the assumption and loan modification process. The potential harm from CHASE's mishandling of her application was foreseeable. CHASE's delay in processing the modification caused interest and fees continued to accrue on the account every month. It was also foreseeable

15

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1  that Plaintiff would turn to foreclosure rescue companies in desperation when CHASE
2  would not provide information about the loan and her application for assistance. Finally, it
3  is foreseeable that Plaintiff, a grieving widow, would suffer severe emotional distress when
4  the servicer of the loan secured by her marital home refused to communicate with her,
5  refused to process her assumption and loan modification application, and then initiated
6  foreclosure proceedings that put her home at risk.

7       76.    There is a close connection between CHASE's conduct and Plaintiff's
8  injuries. Plaintiff believes that she qualified for a modification in October 2012. Had
9  CHASE exercised ordinary care in processing her assumption and modification at that
10 time, the lien secured by her real property would be significantly lower and she would not
11 have suffered years of emotional distress.

12      77.    Public policy favors preventing future harm to homeowners such as
13 Plaintiff, as described above.

14      78.    Finally, CHASE's conduct in this case was morally blameworthy.

15      79.    Based on the foregoing factors, CHASE had a duty to communicate with
16 Plaintiff regarding the loan, her assumption, and her loan modification application, and
17 CHASE had a duty to exercise ordinary care in processing her assumption and loan
18 modification application.

19      80.    CHASE breached this duty of care by:
20         a.   failing to communicate with Plaintiff or her attorney regarding the loan
21             and her application for assistance, including failure to respond to
22             Plaintiff's RFI and NOE;
23         b.   requiring that Plaintiff repeatedly submit her husband's death certificate
24             to CHASE;
25         c.   instructing Plaintiff to file a probate case in order to become executor of
26             her husband's estate when title had already passed to her by operation of
27             the deed;

         d.   refusing to recognize Plaintiff's assumption of the loan;

         e.   refusing to process Plaintiff's application to modify the loan; and

         f.   recording a Notice of Default containing false statements while Plaintiff's application was pending.

81. CHASE knew or reasonably should have known that these actions would put Plaintiff's home at risk of foreclosure, cause Plaintiff severe emotional distress, and cause excessive charges to accrue on the loan. As a direct and proximate result of CHASE's negligent actions, Plaintiff has suffered injuries, including, but not limited to: emotional distress, accrual of interest and fees on her mortgage loan account, and other expenses to be proven at trial.

## VII.   REQUEST FOR RELIEF

Plaintiff prays for relief as follows:

1. For a declaration that Plaintiff is the prevailing party in this action;
2. For economic damages, according to proof;
3. For general damages, including emotional distress damages, according to proof;
4. For statutory damages of $2,000 under RESPA;
5. For attorney's fees and costs incurred in this action; and
6. For such other and further relief as the Court deems just and proper.

         Respectfully submitted,

         BAY AREA LEGAL AID

         By:   /s/ Kari A. Rudd
                    Kari Rudd,
                    Attorney for Plaintiff
                    MARY FRANK

//

//

//

**DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, MARY FRANK, hereby respectfully requests a trial by jury on all appropriate issues raised in this complaint.

> By: /s/ Kari A. Rudd
> Kari Rudd,
> Attorney for Plaintiff
> MARY FRANK

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL